**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1154
_____

PATRICIO YANES-ZEPEDA,
AKA Patricio Zepeda Yanes,
AKA Christian Patricio Yanes Zepeda,
AKA Oscar Zuniga,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(Agency No. A078-496-285)
Immigration Judge:  John B. Carle
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 19, 2019
_____

Before:  CHAGARES, MATEY, and FUENTES, Circuit Judges.

(Filed: November 25, 2019)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

CHAGARES, Circuit Judge.

Patricio Yanes-Zepeda petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") denial of his applications for withholding of removal and for relief under the Convention Against Torture ("CAT") and rejecting his argument that the IJ lacked jurisdiction over his removal proceedings because of the Supreme Court's decision in Pereira v. Sessions, 138 S. Ct. 2105 (2018). For the following reasons, we will deny his petition.

I.

Yanes-Zepeda is a native and citizen of Honduras. He illegally entered the United States in 2000 and was ordered deported on April 18, 2001. He re-entered the United States illegally on July 26, 2017. On November 7, 2017, the Department of Homeland Security ("DHS") served Yanes-Zepeda with a Notice of Intent/Decision to Reinstate (Form I-871) his 2001 deportation order. Yanes-Zepeda applied for withholding of removal and for CAT protection.

Before the IJ, Yanes-Zepeda testified that he came to the United States out of fear of the MS-13 gang in Honduras. He described how MS-13 members extorted money from him through threatened violence and how, in 2012, after he refused to pay, gang members shot at his car with him inside. After the shooting, Yanes-Zepeda moved to another city; but, four years later, he received a phone call in which the caller informed him that "they found [him]" and demanded money. Administrative Record ("AR") 143–44. He paid the extortion money for a time, then filed a complaint with the police. The

2

gang found out about his complaint and ransacked his home. According to Yanes-Zepeda, the Honduran police took no action, so he decided to flee to the United States.

Yanes-Zepeda argued that his experiences constitute past persecution; that he belongs to the protected social group of Honduran "civilian witnesses who have assisted law enforcement officials against violent gangs," AR 239; that the gangs persecuted him because of his membership in that group; and that the gangs would torture him if he returned, and the Honduran government would be unable or unwilling to prevent it.

The IJ found Yanes-Zepeda credible, but concluded that he did not demonstrate past persecution, did not belong to a cognizable protected social group, and, even if he did, he could not show that the violence he experienced was on account of his membership in that group. The IJ also found that Yanes-Zepeda did not show that he would likely be tortured if he returned or that the Honduran government would consent, acquiesce, or be willfully blind to such torture. Yanes-Zepeda appealed to the BIA, where he also argued that the Supreme Court's decision in Pereira prevented the IJ from exercising jurisdiction over his case because the initial Notice to Appear ("NTA") failed to specify the time and place of his hearing. The BIA dismissed the appeal on the same grounds offered by the IJ and added that any defect in the NTA was cured by the notice of hearing, which specified the time and place of the hearing. Yanes-Zepeda timely filed a petition for review.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review the BIA's order. The BIA had jurisdiction to review the IJ's decision under 8 C.F.R. § 1003.1(b)(3). We

3

generally only consider the reasoning offered by the BIA, but because the BIA adopted the IJ's findings and also discussed the bases for the IJ's decision, we review both the BIA's and the IJ's decisions. Saravia v. Att'y Gen., 905 F.3d 729, 734 (3d Cir. 2018).

We must uphold factual determinations as to withholding of removal and CAT protection if they are "supported by substantial evidence from the record." Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). This means "we will reverse based on a factual error only if any reasonable fact-finder would be 'compelled to conclude otherwise.'" Id. (quoting 8 U.S.C. § 1252(b)(4)(B)). We review the BIA's legal conclusions de novo, but we defer to its "interpretation of statutes and regulations within its enforcement jurisdiction" in accordance with Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Huang, 620 F.3d at 379.

### III.

We begin with Yanes-Zepeda's withholding of removal argument, then address his CAT protection argument, and, finally, examine his jurisdictional argument.

### A.

To receive withholding of removal, an alien must demonstrate that there is a "clear probability" of persecution, Senathirajah v. INS, 157 F.3d 210, 215 (3d Cir. 1998), in the proposed country of deportation on account of "the alien's race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1231(b)(3)(A). "Persecution" is defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Camara v. Att'y Gen., 580 F.3d 196, 202 (3d Cir. 2009) (quoting Fatin v. I.N.S., 12 F.3d 1233, 1240 (3d

4

Cir. 1993). The alien can establish this "clear probability" by presenting evidence of future persecution or by showing that he or she was subject to past persecution, which creates a rebuttable presumption of future persecution. 8 C.F.R. § 1208.13(b). The alien must also show a "nexus, or a causal link," between the persecution and membership in the protected social group. S.E.R.L. v. Att'y Gen., 894 F.3d 535, 544 (3d Cir. 2018).

We hold that the record supports that Yanes-Zepeda's experiences with gang violence in Honduras do not qualify as past persecution, and, even if they did, he cannot demonstrate that they occurred because of his membership in a protected social group. Yanes-Zepeda's 2012 shooting incident and the threats he received in 2017 do not rise to the level of "persecution" under our precedent. See, e.g., Kibinda v. Att'y Gen., 477 F.3d 113, 119–20 (3d Cir. 2007) (deciding that a single five-day detention and beating that caused a wound requiring stitches did not constitute persecution). The record also supports the IJ's and BIA's findings that the gang violence that Yanes-Zepeda experienced springs from criminal motivations, not from animosity toward his purported social group or political opinion. Because Yanes-Zepeda's application for withholding of removal fails on these grounds, we do not reach the issue of whether he was a member of a cognizable protected social group.

B.

To obtain relief under CAT, an applicant must demonstrate, inter alia, that it is "more likely than not" that he or she will be tortured in the proposed country of deportation. Obale v. Att'y Gen., 453 F.3d 151, 161 (3d Cir. 2006). Torture is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted

5

. . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). "[A]cquiescence to torture requires only that government officials remain willfully blind to torturous conduct." Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 70 (3d Cir. 2007).

The record supports the conclusion that Yanes-Zepeda failed to show that it was more likely than not that he would be tortured in Honduras by, or with the acquiescence of, the Honduran Government. Yanes-Zepeda's only evidence on this point is his own testimony and an expert report, which was itself based on Yanes-Zepeda's case documents and a general assessment of violence in Honduras. The record contains no evidence of past torture, no evidence of an individualized risk of future torture, and no evidence that law enforcement would be willfully blind to acts of torture committed by gangs.

C.

Finally, Yanes-Zepeda's argument that the IJ lacked jurisdiction over his proceedings based on the Supreme Court's holding in Pereira fails because we recently rejected a similar challenge in Nkomo v. Att'y Gen., 930 F.3d 129 (3d Cir. 2019). In that case, we decided that "Pereira's interpretation of 'notice to appear' [does not] implicate[] the IJ's authority to adjudicate," and so the fact that an NTA fails to specify the time and place of the removal hearing does not deprive the IJ of jurisdiction. Nkomo, 930 F.3d at 134. We are bound by our opinion in Nkomo. See United States Court of Appeals for the Third Circuit, I.O.P. 5.2.

6

## IV.

For the foregoing reasons, we will deny the petition for review.