**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3570
_____

MILTON MODESTO JARAMA,
                              Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                              Respondent


_____

On Petition for Review of a Decision of the Board of Immigration Appeals
(No. A073-576-642)
Immigration Judge: John P. Ellington
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 9, 2019
_____

Before: RESTREPO, ROTH and FISHER, *Circuit Judges.*

(Filed: March 12, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Petitioner Milton Modesto Jarama petitions for review of the decision of the Board of Immigration Appeals (BIA) dismissing his appeal of the Immigration Judge's (IJ) denial of adjustment of status under the Immigration and Nationality Act, 8 U.S.C. § 1255(a).

**I**

Jarama is a native and citizen of Ecuador who has resided in the United States since 1988. In March 2014, the Department of Homeland Security issued a Notice to Appear (NTA) charging him as inadmissible. In the course of proceedings, Jarama applied for adjustment of status as relief from removal. At a May 30, 2017 final hearing, the IJ denied Jarama's application for adjustment of status both "as a matter of statutory eligibility and as a matter of discretion" and ordered him removed. App. A_17. Jarama appealed the IJ's decision to the BIA.

In an October 23, 2017 opinion, the BIA affirmed the IJ's discretionary denial of adjustment of status and thus declined to address statutory eligibility. Reviewing the IJ's discretionary decision *de novo*, the BIA considered the following positive and negative factors:

> The respondent has presented positive factors which generally weigh in favor of granting his application. The respondent, who has resided in the United States for nearly 30 years, has strong family ties to this country, including his spouse and three children, and has apparently maintained gainful employment in this country. His removal from the United States would result in a significant level of hardship to himself and his family.
> The respondent's criminal record is a serious adverse factor. Aside from his arrests not resulting in convictions, the respondent was convicted of drunk driving offenses in 1997, 2012, 2016, and 2017, and other

2

offenses, such as tampering with a public record in 2006 and recklessly endangering another person in 2012. While the respondent has testified regarding an effort to seek rehabilitation, he demonstrated a tendency to minimize his conduct. He continued to drive after his license was suspended in approximately 2011 and has not complied with this nation's tax laws for more than a decade.

App. A_2–3 (citations omitted). Considering the "totality of the circumstances," the BIA affirmed the IJ's discretionary decision. App. A_3.

The BIA declined to remand the case to a different IJ based on Jarama's claim that the IJ failed to maintain "judicial objectivity." App. A_3. On this point, the BIA stated:

Here, the respondent was provided a reasonable opportunity to present the merits of his application for adjustment of status and has not established that substantial prejudice resulted from the alleged misconduct. *Fadiga v. U.S. Att'y Gen.*, 488 F.3d 142, 155 (3d Cir. 2007). Given the overall seriousness and repeated nature of the respondent's criminal convictions, he has not established that the claimed infraction had potential for affecting the outcome of these proceedings, i.e., a discretionary denial of his application for adjustment of status and the entry of an order of removal. *Cham v. U.S. Att'y Gen.*, 445 F.3d 683, 691, 694 (3d Cir. 2006).

App. A_3. Jarama timely petitions for review of the BIA's decision.[1]

## II

Jarama raises two issues in his petition, one jurisdictional and one constitutional.

## A

First, Jarama contends that the IJ and the BIA lacked subject matter jurisdiction over his removal proceedings because the March 2014 NTA charging him as inadmissible failed to list the time and place of his hearing before the IJ. By his

---

[1] The BIA exercised jurisdiction over this case under 8 C.F.R. § 1003.1(b)(3), and we exercise jurisdiction over this petition for review pursuant to 8 U.S.C. § 1252.

argument, because the NTA lacked this statutorily required information, the defective charging document failed to vest the IJ with subject matter jurisdiction.[2]

Our precedential opinion in *Nkomo v. Attorney General*, 930 F.3d 129 (3d Cir. 2019) squarely forecloses this argument. In *Nkomo*, we held that "a notice to appear that fails to specify the time and place of an initial removal hearing" does not "deprive[] an immigration judge of jurisdiction over the removal proceedings." *Id.* at 131. Here, pursuant to *Nkomo*, the IJ and the BIA properly exercised subject matter jurisdiction over Jarama's case, despite the lack of time and place information in the charging document.[3]

**B**

Second, Jarama argues that the IJ failed to act in a neutral manner in violation of his Fifth Amendment due process rights. The Government contends that this Court lacks jurisdiction to review Jarama's due process challenge because his claim is "not colorable" and is "ultimately challenging the agency's discretionary denial of adjustment of status." Respondent's Br. 16.[4]

While this Court lacks jurisdiction to review judgments regarding discretionary relief, 8 U.S.C. § 1252(a)(2)(B)(i), we retain jurisdiction to review "constitutional claims

---

[2] Petitioner acknowledges he received the relevant time and place information in a separate notice issued at around the same time as the deficient NTA.

[3] Our recent opinion in *Guadalupe v. Att'y Gen.*, No. 19-2239, 2020 WL 913242, at *3 (3d Cir. Feb. 26, 2020), held that an insufficient NTA fails to trigger the stop-time rule. Nevertheless, as we decided in *Nkomo*, 930 F.3d at 131, an insufficient NTA does not affect jurisdiction. *Nkomo* is controlling here.

[4] The Government also raised this argument in a motion to dismiss the petition for review for lack of jurisdiction filed on November 28, 2017. For the reasons discussed herein, we will deny that motion.

or questions of law" when they are "colorable," *Pareja v. Att'y Gen.*, 615 F.3d 180, 186 (3d Cir. 2010). "To determine whether a claim is colorable, we ask whether 'it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous.'" *Id.* (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006)). A colorable claim must "consist of more than mere bald-faced allegations of misconduct." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996). A claim can be both colorable and meritless—and we would exercise jurisdiction over such a claim.

We hold that Jarama's due process claim, discussed below, is "colorable." It is not "immaterial," "made solely for the purpose of obtaining jurisdiction," or "wholly insubstantial and frivolous." *See Pareja*, 615 F.3d at 186. And he asserts "more than mere bald-faced allegations of misconduct." *See Voigt*, 89 F.3d at 1067. We will thus address the merits. In doing so, we will affirm findings of fact that are based on "substantial evidence," and we will exercise plenary review over legal determinations. *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 212–13 (3d Cir. 2017).

Fifth Amendment due process protections afford individuals in immigration proceedings an "'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Serrano-Alberto*, 859 F.3d at 213 (quoting *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (en banc)). "[P]etitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf and a decision on the merits of their claim by a neutral and impartial arbiter." *Id.* (internal quotations and citations omitted); *see also Cham*, 445 F.3d at 691 ("No person may be deprived of his interests in the absence of a proceeding [where] . . . the arbiter is not predisposed to find

5

against him." (internal quotations and alteration omitted)). Even where the Petitioner's underlying claim is for discretionary relief, he maintains his constitutional due process rights. *Id.*

To establish a due process violation, a petitioner must demonstrate that the alleged violation "had the *potential* for affecting the outcome" of the proceedings. *Id.* at 694. In *Cham*, this Court held that an IJ violated a petitioner's due process rights where the IJ approached the petitioner with "belligerence" and "wholesale nitpicking of [his] testimony," effectively preventing him from presenting his case. *Id.* at 691, 694 ("Had Cham not been brow beaten, and had corroboration by his relatives been actually heard and considered, it is possible that material details surrounding his experience would have come to light, justifying relief from deportation.").

Jarama first argues that the IJ violated his due process rights when he "rel[ied] not just on convictions but also on contacts with law enforcement against the legal standard for finding removability." Petitioner's Br. 25–26. Under BIA precedent, an arrest—without a prosecution, an admission, any corroboration, or the like—should be given "little weight" as a negative factor in a discretionary analysis. *In re Arreguin De Rodriguez*, 21 I. & N. Dec. 38, 42 (B.I.A. 1995).

Here, contrary to Jarama's arguments, the IJ did not rely on Jarama's arrests or charges that did not result in convictions in denying his adjustment of status. While the IJ noted separate instances where multiple charges were brought against Jarama, the IJ took care to differentiate which charges resulted in convictions and which did not. Then, in summarizing his conclusion on the negative discretionary factors, the IJ made it clear

6

that he appropriately relied on convictions and admissions of criminal conduct, not arrests:

> The court would find that the respondent's **criminal convictions** are overwhelming in this case. The court would note that the pattern of conduct regarding irresponsible and potentially deadly behavior is overwhelming in this case. The respondent has been **convicted** of multiple DUIs. The court would note that the respondent has been **convicted** of two DUIs since he was placed in immigration proceedings. The court would find that the respondent knew of the potential consequences, since he was in immigration proceedings, and continued to engage in criminal behavior.

App. A_16–17 (emphasis added). In addition to the IJ's lack of reliance on the existence of arrests, this alleged misconduct could not have potentially impacted the outcome of the case, given the IJ's strong emphasis on convictions and given that the Petitioner does not take issue with the BIA's *de novo* review of the negative discretionary factors, which independently affirmed the IJ's conclusion.

Jarama's next argument, based on three different comments by the IJ, essentially contends the IJ was not a "neutral and impartial arbiter." *Serrano-Alberto*, 859 F.3d at 213. This argument fails because the Petitioner mischaracterizes the IJ's quotations and because, unlike in *Cham*, the Petitioner has not shown how the alleged indiscretions would have "the potential for affecting the outcome" of his proceedings. *See* 445 F.3d at 694.

The first two comments by the IJ that the Petitioner claims were improper, (1) that Jarama's wife "'should get comfortable" taking the "children to the laundromat by herself'" and (2) that the IJ would "'bet his pension' that Jarama would be deported," Petitioner's Br. 26 (record citations not provided), appear to reference an October 20,

7

2016 hearing that took place before Jarama applied for adjustment of status. A.R. 739–40, 742–43 (respectively). Viewing these statements as they were actually said and in proper context, it is clear that the IJ was not demonstrating bias or animosity.

Regarding the first statement, during an exchange about whether Jarama was seeking voluntary departure, the IJ seemed to acknowledge Jarama's wife's difficult situation in a straightforward manner:

> I understand it's a difficult situation because you have kids and you have a husband that's locked up. And there are all kinds of issues. And it's not easy because you're losing money and it's nerve wrack [sic] and you have to deal with the sick kids and the laundry and the grocery shopping and everything by yourself. . . . I only understand a little bit of what you're going through but I have empathy for what you are probably going through as the head of the household.

A.R. 739–40.

Regarding the second statement, the IJ was speculating that the BIA would uphold his decision denying bond for Jarama. The IJ stated:

> I got to be honest with you. I think even if you appeal your bond, based on my experience – and I could be wrong – the Board of Immigration Appeals is not going to give you a bond. I would honestly be willing to bet my retirement on that. But I could be wrong. So, if anybody is listening and he gets a bond, I'm not actually betting my requirement [sic]. I was just being whatever. So, I can't give you a bond. So, right now you have no form of relief other than voluntary departure.

A.R. 742–43.

While the IJ perhaps took more editorial license than ideal—and then seemingly bit his tongue—he did not "'bet his pension' that Jarama would be deported" before hearing all of the evidence. Petitioner's Br. 26. Neither this statement nor the statement above amounts to a due process violation. Neither demonstrates that the IJ failed to act in

8

a neutral manner, and neither could potentially impact the outcome of the proceedings. *See Cham*, 445 F.3d at 691 (holding that Petitioner's due process rights were violated where the IJ approached the petitioner with "belligerence" and "wholesale nitpicking of [his] testimony").

All that remains for analysis is the last statement noted by Petitioner: that the IJ "express[ed] to Jarama in open court his belief that Jarama's alleged entry to the United States was a fabrication" when Jarama had clarified why there was a misunderstanding about certain details of his entry into the country. Petitioner's Br. 26–27. Even if we were to assume that this could constitute wrongful conduct, neither the IJ nor the BIA relied on this information when they denied relief as an exercise of discretion. *See* App. A_9 (IJ opinion) (stating that "even if [the court] were to find a 100 percent credible finding in this case, [it] would deny [relief] as a matter of discretion"), A_2 (BIA opinion) ("We are not persuaded that the respondent has established that he warrants adjustment of status as a matter of discretion."). Jarama thus cannot demonstrate that this could have "the potential for affecting the outcome" of his proceedings. *Cham*, 445 F.3d at 694.

Given the above, Jarama has not established a Fifth Amendment due process violation.

## III

For the foregoing reasons, we will deny the petition for review.

9