**NOT PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT
_____

No. 19-3450
_____

CARMELINO GOMEZ-ELIAS; JUANA TEBALAN-CASTRO;
MARGELY GOMEZ-TEBALAN; JOSUE ABIMAEL GOMEZ-TEBALAN,

Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A208-180-087, A208-180-089,
A208-180-094 & A208-180-095)
Immigration Judge:  Honorable Charles M. Honeyman

_____

Submitted on a Motion for Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
February 27, 2020

Before:  RESTREPO, PORTER and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 7, 2020)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Carmelino Gomez-Elias, his wife, Juana Tebalan Castro, and two of their children petition for review of an order of the Board of Immigration Appeals ("BIA"), which affirmed the Immigration Judge's ("IJ") removal order. Because the petition presents no substantial question for review, we will grant the Government's motion for summary action.

Carmelino[1] and his family are citizens of Guatemala. They entered the United States in September 2015 without proper entry documents. They applied for asylum and related relief, based on extortion and death threats against the family. Juana received a call on the family's cell phone from a caller who identified himself as Luis Lopez. Luis threatened to kill her family unless she deposited 8000 queztals in a designated bank account. When Juana explained that she did not have the money, Luis stated that he knew that she had adult children in the United States and that she owned a business (she sold chickens and vegetables at a market stall) and so she must have money. Juana did not report the call to the police because Luis threatened to harm her family. Juana obtained loans from friends and paid part of the amount. Luis then called again and demanded the full amount. Juana got more loans and completed the payment. About a month later, Luis called again and demanded another 3000 queztals. He said that he would kill Juana's family if she did not pay. Juana went to the police, who recommended that she deposit 50 queztals in the designated account so that they could track the payment. She did as the police requested. Luis called and threatened to finish off the

---

[1] We will follow Petitioners' lead and refer to the family members by their first names.

family if she did not complete the payment. The family fled to Carmelino's brother's ranch and then a few days later left for Mexico, and eventually the United States. The family has not directly received more threats, but extended family members that live near their home in Guatemala reported that armed men had entered their home looking for them and shooting.

In immigration proceedings, the IJ found Carmelino and Juana credible.[2] But the IJ denied relief, finding no nexus between threats against the family and any protected status. In particular, the IJ determined that the extortion and threats were not based on any family member's imputed political opinion or because of their membership in any "particular social group" ("PSG"). The IJ also denied relief under the Convention Against Torture. The BIA affirmed the IJ, and with regard to relief under the CAT noted that the possibility of torture could not be "based on a chain of assumptions" and that there was "insufficient evidence that any feared torture would be inflicted with the consent, acquiescence or willful blindness of a public official." BIA decision at 4.[3]

The Petitioners have filed a timely, counseled petition for review and a motion for a stay of removal. The Government filed a motion for summary affirmance and opposition to the stay motion. Because the briefing schedule was not stayed (the

---

[2] The Government waived the children's presence at the hearing.

[3] Petitioners also raised a claim before the IJ and BIA that removal proceedings should be terminated, based on Pereira v. Sessions, 138 S. Ct. 2105 (2018), because their Notices to Appear lacked a time and date. Petitioners are not pursuing that claim here, and any such claim is foreclosed by this Court's decision in Nkomo v. Attorney General, 930 F.3d 129, 132-34 (3d Cir. 2019).

Petitioners have since filed their opening brief and the Government has filed its brief as well), we will consider the parties' briefs along with their motions.

We have jurisdiction under 8 U.S.C. § 1252. We review the BIA's decision and consider the IJ's decision to the extent that the BIA deferred to it. See Roye v. Att'y Gen., 693 F.3d 333, 339 (3d Cir. 2012). To prevail on their asylum claim, Petitioners had the burden of establishing that they were persecuted, or that they had a well-founded fear of being persecuted, on a protected ground, such as political opinion or membership in a PSG. 8 U.S.C. § 1101(a)(42)(A). For a PSG claim, a petitioner must establish "(1) a particular social group that is legally cognizable; (2) membership in that group; (3) a well-founded fear of persecution, which must be subjectively genuine and objectively reasonable; and (4) a nexus, or causal link, between the persecution and membership in the particular social group." S.E.R.L. v. Att'y Gen., 894 F.3d 535, 544 (3d Cir. 2018).

Petitioners argue here that the IJ and BIA erred in determining that their nuclear family was not a cognizable PSG. But their claim was not rejected for that reason; instead, it was rejected because they failed to show a nexus between the extortion and threats and their family membership. We agree that the record does not support a finding that Luis targeted Juana or her family because of their family membership, rather than based on purely criminal motives. See, e.g., Gonzalez-Posadas v. Att'y Gen., 781 F.3d 677, 686-87 (3d Cir. 2015) (noting that criminal activity that is motivated by a desire to reap financial rewards does not constitute persecution); see also Abdille v. Ashcroft, 242 F.3d 477, 494 (3d Cir. 2001) ("[O]rdinary criminal activity does not rise to the level of persecution necessary to establish eligibility for asylum.").

4

Petitioners also argue that the persecution was on account of imputed political opinion, i.e., opposition to gangs, as shown by Juana's police report, but that is an even weaker claim. Petitioners cite Espinosa-Cortez v. Attorney General, 607 F.3d 101 (3d Cir. 2010), in which we held that an asylum applicant who "made his living by supporting the Colombian government, military, and military academy through the provision of food and other services," id. at 110, could be seen by his persecutors as having an imputed pro-Colombian-government political opinion, id. at 110-12. In contrast, Carmelito, Juana, and their family have no apparent connection with the Guatemalan government or any political entity. Because Petitioners did not establish that they were persecuted, or might be persecuted, on a protected ground, we agree that asylum was not warranted.[4]

A claim under the Convention Against Torture does not require showing that the feared torture will be motivated by a protected ground, but the applicant must show that the torture would occur with the consent or acquiescence of a public official. 8 C.F.R. § 1208.18(a)(1). Petitioners did not establish acquiescence. The police were investigating the extortion threat against the family. But Petitioners left before they learned whether the police succeeded in finding the culprit. Thus, they cannot establish that the police breached any duty to protect them from possible torture. See Dutton-Myrie v. Att'y Gen., 855 F.3d 509, 516 (3d Cir. 2017) ("To establish acquiescence, an

---

[4] And because the standard for withholding of removal "is more demanding than that governing eligibility for asylum, an alien who fails to qualify for asylum is necessarily ineligible for withholding of removal." See S.E.R.L., 894 F.3d at 544 (quoting Valdiviezo-Galdamez v. Att'y Gen., 663 F.3d 582, 591 (3d Cir. 2011)).

applicant must demonstrate that, prior to the activity constituting torture, a public official was aware of it and thereafter breached the legal responsibility to intervene and prevent it." (citing 8 C.F.R. § 1208.18(a)(7)).

For all these reasons, we grant the Government's motion for summary action and will deny the petition for review. Petitioners' motion for a stay of removal is denied as moot, and the temporary administrative stay entered on December 4, 2019, is vacated.