NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 19-1474 & 19-3084

CASIMIRO ZAPATA-MARTINEZ a/k/a Ezekiel Mota,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

On Petition for Review of Final Orders
of the Board of Immigration Appeals
Immigration Judges:  Kuyomars Q. Golparvar and Leo A. Finston
(No. A078-829-852)

Submitted Under Third Circuit L.A.R. 34.1(a)
April 23, 2020

Before: AMBRO, SHWARTZ and BIBAS, Circuit Judges

(Opinion filed: April 29, 2020)

OPINION*

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AMBRO, <u>Circuit Judge</u>

Petitioner Casimiro Zapata-Martinez petitions for review of two decisions. In No. 19-1474, he seeks review of a Department of Homeland Security ("DHS") order reinstating a prior order of removal and a decision of an Immigration Judge ("IJ") that Zapata-Martinez did not demonstrate a reasonable fear of persecution or torture that would warrant a full hearing on the merits of his claims for withholding of removal or Convention Against Torture ("CAT") protection. In No. 19-3084, he challenges the denial by the Board of Immigration Appeals ("BIA") of his motion to reopen and terminate his proceedings pursuant to *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). For the reasons stated below, we deny his petitions for review.

## I. Facts and Procedural History

### A. Factual Background

Zapata-Martinez is a citizen of the Dominican Republic. He arrived in the United States in 1999 without being admitted or paroled. In October 2001, he was convicted for distribution of heroin and sentenced to eighteen months' imprisonment. In March 2002, DHS served him with a notice to appear. He was taken into DHS custody and served with a hearing notice that included the time, date, and location of his immigration hearing. Zapata-Martinez did not apply for protection or relief from removal and was removed shortly thereafter. He subsequently illegally reentered the United States on an unknown date and at an unknown location. On April 13, 2018, DHS detained him and reinstated his 2002 removal order.

2

**B. Reasonable Fear Determination**

Zapata-Martinez had a "reasonable fear" interview with an asylum officer in January 2019, during which he described harm he experienced in the Dominican Republic from a criminal group called "Los Trinitarios." Between 1997 and 2005 he was threatened "many times" and harmed once. No. 19-1474 EOIR A.R. 44.[1] His motorcycle was stolen by Los Trinitarios in 1997. When he reported the theft to the police, they told him "that they [we]re going to investigate" the incident. *Id.* at 47. He then decided to investigate on his own because he worried that police were working with Los Trinitarios, and he subsequently recovered his motorcycle. Los Trinitarios members then threatened Zapata-Martinez because they were angry about the recovery, after which five or six Los Trinitarios members beat him up, including inflicting a head injury and stab wound in his back. The men also threatened Zapata-Martinez because he had reported them. He did not know how the group learned that he reported them. He left his town after the assault but continued receiving threats from Los Trinitarios. He came to the United States in 1999, approximately six months after the assault.

Zapata-Martinez stated that between 2002 and 2005, when he returned to the Dominican Republic, he was never physically harmed, but he continued to receive indirect and written communications from Los Trinitarios members threatening to kill him. In 2005, his brother was killed, and Zapata-Martinez speculated that the murderers

---

[1] Three records have been filed for the two consolidated cases. In No. 19-1474 (reasonable fear proceedings) two records were filed—one from the Executive Office for Immigration Review ("No. 19-1474 EOIR A.R.") and one from DHS ("No. 19-1474 DHS A.R."), and in No. 19-3084 (motion to reopen/terminate) one record was filed from the Executive Office for Immigration Review ("No. 19-3084 A.R.").

were Los Trinitarios members who were looking for him. He is afraid that, if returned to the Dominican Republic, he would be killed by gang members.

Zapata-Martinez admitted that he never reported to the police his encounters with the criminal group aside from the 1997 motorcycle theft. He never experienced "any mistreatment, threats or harm from public officials" in the Dominican Republic and never had any problems with the government. *Id.* 49. He claimed the police are corrupt but admitted he "d[id]n't have any proof" of a connection between police and Los Trinitarios. *Id.* 50. He also claimed that his son was shot in the Dominican Republic, but he "d[id]n't know" who shot him. *Id.* 51. He speculated it was Los Trinitarios or the police. Zapata-Martinez also admitted he had never been threatened or harmed because of his race, ethnicity, religion, political beliefs, or nationality.

The asylum officer determined Zapata-Martinez failed to establish a reasonable fear of persecution or torture (noting that the harm he experienced was not on account of a protected characteristic), failed to show that the group who harmed him was motivated by a protected ground rather than criminal activities or retaliation, and did not provide specific and persuasive testimony to indicate that Los Trinitarios was connected to the police. The officer also found Zapata-Martinez failed to show a reasonable probability of torture with the consent or acquiescence of a public official.

The IJ conducted a hearing in February 2019. He acknowledged Zapata-Martinez's fear of harm and found him credible but concluded he did not establish that his fear of harm was related to a protected ground. The IJ also found that Zapata-Martinez did not demonstrate that the government was blind, or had acquiesced, to his

4

harm, noting police told him they would investigate the motorcycle theft, but that he instead took matters into his own hands and did not report any further incidents. The IJ issued an order finding no connection to any protected characteristic and no government action.

### C. Motion to Reopen

Separately, Zapata-Martinez filed a motion to reopen in which he sought termination of his initial immigration proceedings under *Pereira*, 138 S. Ct. 2105, because of deficiencies in his notice to appear. The IJ denied his motion after concluding the notice to appear properly vested jurisdiction with the Immigration Court despite its lack of a time and date for Zapata-Martinez's immigration hearing.

Zapata-Martinez appealed, and the BIA affirmed. It determined that his arguments were foreclosed by *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441 (BIA 2018), which held that a notice to appear that did not specify the time and place of an alien's initial hearing vested an IJ with jurisdiction over the removal proceeding so long as a proper notice specifying that information was later sent. Zapata-Martinez was provided with a hearing notice that indicated the time, date, and place of his hearing. Thus, the IJ concluded that *Pereira*'s holding regarding the stop-time rule for calculating physical presence was not relevant here and dismissed the appeal.[2]

---

[2] To be eligible for cancellation of removal, an alien must accrue 10 years of continuous physical presence in the United States "immediately preceding the date" of the application for cancellation. 8 U.S.C. § 1229b(b)(1)(A). That continuous physical presence ceases to accrue "when the alien is served a notice to appear under section 1229(a)." *Id.* § 1229b(d)(1)(A). This is known as the "stop-time rule," and *Pereira* addressed what type of notice is adequate to trigger it. 138 S. Ct. at 2109.

## II. Discussion

Where a petitioner whose prior removal order has been reinstated "expresses a fear of returning to the country of removal," he is first screened through an interview by an asylum officer "to determine whether the alien has a reasonable fear of persecution or torture" and whether he is thus eligible for full consideration of his potential claim for non-return or protection against torture. 8 C.F.R. §§ 208.31(a)–(c), 241.8(e). To qualify, the alien must show that there is a "reasonable possibility" that he would be persecuted or tortured in the country of removal. *Id.* § 208.31(c). If the asylum officer determines that the alien has a reasonable fear of persecution or torture, he must refer the alien to an IJ "for full consideration" of the alien's eligibility for statutory withholding of removal and CAT protection. *Id*. § 208.31(e). Those proceedings are conducted "in accordance with the provisions of § 208.16" and are subject to the jurisdiction of the BIA and circuit courts. *Id*. § 208.31(e); *see Ortiz-Alfaro v. Holder*, 694 F.3d 955, 956–59 (9th Cir. 2012). However, if the asylum officer determines that the alien does not have a reasonable fear, he is given the opportunity for review of that determination by an IJ. *See* 8 C.F.R. § 1208.31(f)-(g). If the IJ reverses the asylum officer's determination, he then proceeds to decide the alien's eligibility for statutory withholding of removal and CAT protection, and that decision is subject to review by the BIA. *Id.* § 1208.31(g)(2). But where, as here, the IJ upholds the negative screening determination, the alien may be removed without any opportunity for appeal to the BIA. *Id.* § 1208.31(g)(1); *see Ortiz-Alfaro*, 694 F.3d at 957.

We have jurisdiction to review the IJ's reasonable fear determination and the denial of the motion to reopen under 8 U.S.C. § 1252(a)(1). *See Bonilla v. Sessions*, 891 F.3d 87, 90 n.4 (3d Cir. 2018) (stating that an IJ's negative reasonable fear determination "constitutes a final order of removal"). It is true that, under 8 U.S.C. § 1252(a)(2)(C) and (D), our review is limited to questions of law. We do not perceive that we are engaged in a review of factfinding in this case. However, even if there is some analysis of facts amid our legal discussion, our review is not precluded. *See Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068–69 (2020) (holding that the review of "mixed" questions of fact and law is not precluded by § 1252(a)(2)(C) and (D)).

We have not decided what standard of review applies to an IJ's negative reasonable fear determination. The Ninth Circuit has held that those determinations should be reviewed for substantial evidence. *See Andrade-Garcia v. Lynch*, 828 F.3d 829, 833 (9th Cir. 2016). Zapata-Martinez urges us to follow that decision. The Government argues that a reasonable fear determination is merely an agency assessment not equivalent to a decision by it denying an alien's application for relief; accordingly, we should review the IJ's determination under the deferential "facially legitimate and bona fide reason" standard first announced in *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972).

We need not decide which standard of review applies because, even if we review for substantial evidence, the record does not compel an outcome in Zapata-Martinez's favor. There is no indication that a statutorily protected ground was or would likely be a reason for any persecution. *See Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684–85

7

(3d Cir. 2015); *Matter of C-T-L-*, 25 I. & N. Dec. 341, 346-48 (BIA 2010). Zapata-Martinez's evidence reveals that he was targeted by members of a criminal organization motivated by their own interests or to retaliate against him for reporting their criminal activities. A general fear concerning prevalent gang activity, without more, does not establish eligibility for withholding of removal. *See Shehu v. Att'y Gen*., 482 F.3d 652, 657 (3d Cir. 2007) (holding that mistreatment resulting from a gang's "bare desire for money" is not persecution on account of a protected ground); *Abdille v. Ashcroft*, 242 F.3d 477, 494–95 (3d Cir. 2001) (holding that ordinary criminal activity is not persecution). There is also no evidence that Zapata-Martinez will be tortured by or with the consent or acquiescence of the government. He admitted that he was never harmed or threatened by police or anyone involved with the Dominican government. He made no showing that the police were in any way involved with Los Trinitarios or likely to turn a blind eye—particularly given his admission that police told him they would investigate his stolen motorcycle, the only incident he ever reported to them. Thus, under any review standard, we would affirm the IJ's reasonable fear determination.

As to the denial of his motion to reopen and terminate his proceedings, Zapata-Martinez's arguments are foreclosed by the BIA's and our own precedent. He challenges the BIA's subject-matter jurisdiction on the ground that his notice to appear did not contain the time and date of his hearing. As noted, his argument is based on *Pereira's* narrow holding that a notice to appear failing to designate the specific time or place of the noncitizen's removal proceedings is not a valid notice under 8 U.S.C. § 1229(a) (provision outlining requirements of a valid notice), and thus does not trigger the stop-

8

time rule. 138 S. Ct. at 2114. But *Nkomo v. Att'y Gen.*, 930 F.3d 129 (3d Cir. 2019), held that a notice to appear without specifying the time and place of an initial removal hearing does not deprive the agency of jurisdiction over the removal proceedings when a supplemental notice is later sent, and that "*Pereira* did not purport to resolve issues beyond the . . . stop-time rule context." *Id.* at 130–33. Zapata-Martinez's argument that *Nkomo* was decided in error is unavailing because we cannot overrule the prior panel's decision absent *en banc* hearing. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293 n.13 (3d Cir. 2018).

*　　*　　*　　*　　*

Accordingly, we deny Zapata-Martinez's petitions for review.