**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3828
_____

ALBERTO MARTINEZ-NIETO,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A074-181-031)
Immigration Judge: John B. Carle
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 14, 2020
_____

Before: HARDIMAN, PORTER, and PHIPPS,
*Circuit Judges*

(Filed: March 25, 2020)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PORTER, *Circuit Judge*.

Alberto Martinez-Nieto applied for withholding of removal and deferral of removal under the Convention Against Torture ("CAT"), citing a fear of persecution if he returned to Mexico. An immigration judge ("IJ") denied the application, and the Board of Immigration Appeals ("BIA") affirmed. Martinez-Nieto petitions for review of the BIA's decision. For the following reasons, we will deny the petition for review.

**I**

Martinez-Nieto is a native and citizen of Mexico. Around 1990, he unlawfully entered the United States. On May 18, 1995, Martinez-Nieto pleaded guilty in California to possession of a controlled substance for sale or purchase for purposes of sale. In 1995, he was charged with removal and deported. After Martinez-Nieto was deported, he unlawfully returned to the United States and was deported again. In 1996, Martinez-Nieto unlawfully reentered the United States for a third time.

In 2016, the Department of Homeland Security reinstated Martinez-Nieto's prior order of removal. This time Martinez-Nieto applied for withholding of removal and deferral of removal under the CAT, claiming a fear of persecution in Mexico on account of his membership in a particular social group. Specifically, he alleged that he was a member of three particular social groups: (1) "Mexicans who have lived in the United States," (2) "Mexican citizens who are perceived to have wealth," and (3) "physically disabled individuals." A19–21.

An IJ denied Martinez-Nieto's application on several independent grounds. First, the IJ determined that Martinez-Nieto was ineligible for withholding of removal because

2

he did not rebut the presumption that his drug conviction was a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B). Second, the IJ determined that Martinez-Nieto did not show that he belonged to a cognizable particular social group. Finally, the IJ found that Martinez-Nieto did not establish under the CAT that it was more likely than not that he would be tortured if he were removed to Mexico. The Board "adopt[ed] and affirm[ed] the [IJ's] thorough and well-reasoned decision." A5.

On the last day of his deadline to appeal, Martinez-Nieto sent a messenger to deliver his petition for review to this Court. The petition was addressed to "Clerk, James A. Byrne United States Courthouse," but the messenger delivered it to the clerk for the United States District Court for the Eastern District of Pennsylvania. Thus, the parties dispute the petition's timeliness.

## II

Our jurisdiction under 8 U.S.C. § 1252(b)(1) is disputed. We review legal questions—such as whether subject matter jurisdiction exists—de novo. *See Nkomo v. Att'y Gen. of U.S.*, 930 F.3d 129, 132 (3d Cir. 2019); *see also, e.g.*, *Ordonez-Tevalan v. Att'y Gen. of U.S.*, 837 F.3d 331, 337–38 (3d Cir. 2016).

When, as happened here, the BIA expressly adopts or defers to the IJ's decision in whole or in part, "we also look to the decision of the IJ." *Chavarria v. Gonzales*, 446 F.3d 508, 515 (3d Cir. 2006) (citations omitted).

Because 8 U.S.C. § 1252(a)(2)(C) limits our review of the denial of withholding of removal claim "based on the commission of an aggravated felony or a controlled substance offense, we retain jurisdiction over [only] constitutional claims and questions

3

of law." *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 174 (3d Cir. 2010) (citing 8 U.S.C. § 1252(a)(2)(D)). We review these claims and questions de novo. *Id.* at 175.

As for claims for deferral of removal under the CAT, we review findings of fact for substantial evidence. *Valdiviezo-Galdamez v. Att'y Gen. of U.S.*, 663 F.3d 582, 590 (3d Cir. 2011). Thus, we reverse the BIA's decision only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

### III

As a threshold matter, the government argues that we lack jurisdiction to consider the petition because it was not timely filed. We disagree.

The BIA's decision was issued on November 21, 2018. Thus, Martinez-Nieto's petition to this Court was due on or before December 21, 2018. It is undisputed that Martinez-Nieto's counsel sent the petition by messenger for filing on December 21, 2018. The petition was addressed to "Clerk, James A. Byrne United States Courthouse," which is the location for both our Court and the United States District Court for the Eastern District of Pennsylvania. The messenger delivered the petition to the clerk's office for the Eastern District. Thus, the petition was delivered to the correct address on the date it was due, but it was received by the wrong court.

Although district courts lack jurisdiction to consider petitions for review of BIA decisions, 8 U.S.C. § 1252(a)(5), the error in delivery can be remedied by transferring the petition to the appropriate court under the federal transfer statute. *See* 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . including a petition for review of administrative action" and "that court finds that there is a want of jurisdiction, the court

4

shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed[.]"). If transferred, the petition "shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed." *Id.*

We may deem the petition filed so long as it is transferable. *Rodriguez-Roman v. INS*, 98 F.3d 416, 422–23 (9th Cir. 1996). We will do so here because the District Court lacked jurisdiction to consider the petition, we would have been able to exercise jurisdiction on the date that the petition was filed in the District Court, and the transfer serves the interest of justice. Though Martinez-Nieto's counsel could have provided the messenger with more precise instructions, she directed the messenger to the appropriate courthouse. It was the messenger who delivered the petition to the wrong dropbox without asking the District Court's clerk's office for assistance. Moreover, declining to transfer the case would be highly prejudicial to Martinez-Nieto because his petition would be time-barred. Thus, we are satisfied that a transfer would serve the interest of justice in this case under § 1631.

**IV**

Martinez-Nieto raises two issues in his petition for review. First, he contends that the BIA erred when it found that he is ineligible for withholding of removal. And second, he argues the BIA erred when it held that he is not eligible for deferral of removal under the CAT. We discern no error, so we will deny the petition for review.

5

**A**

To be eligible for withholding of removal, an alien must show that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). But if the Attorney General decides that an alien has been "convicted by a final judgment of a particularly serious crime," the alien is ineligible for withholding of removal. 8 U.S.C. § 1231(b)(3)(B)(ii); *see* 8 C.F.R. § 1208.16(d)(2); *Bastardo-Vale v. Att'y Gen. of U.S.*, 934 F.3d 255, 265–66 (3d Cir. 2019) (en banc). An alien "who has been convicted of an aggravated felony . . . shall be considered to have been convicted of a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B).

"Aggravated felonies involving unlawful trafficking in controlled substances presumptively constitute 'particularly serious crimes[.]'" *Matter of Y-L-*, 23 I&N Dec. 270, 274 (A.G. 2002); *see also* 8 U.S.C. § 1101(a)(43), (B) (the "term 'aggravated felony' means . . . illicit trafficking in a controlled substance . . . including a drug trafficking crime"). An alien may rebut this presumption[1] only if he can show "at a *minimum*" that the crime involved each of the following elements:

---

[1] Martinez-Nieto asserts that he need not rebut this presumption. He claims that his conviction does not qualify as a "particularly serious offense" because he "did not intend to sell or transport a controlled substance" and because he was merely a "young person relying on the advice of his attorney" when he pleaded guilty to his drug offense. Pet. Br. 15. His argument misses the mark. Martinez-Nieto pleaded guilty to an offense for "possess[ion] for sale or purchase[] for purposes of sale . . . any controlled substance." CAL. HEALTH & SAFETY CODE § 11351. The government charged this conviction as an aggravated felony under 8 U.S.C. § 1101(a)(43)(B), and it served as the basis for his prior order of removal. Thus, his drug conviction triggered the "particularly serious crime" presumption under *Y-L-*.

(1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles.

*Y-L-*, 23 I&N Dec. at 276–77. It is the "very rare case [when] an alien may be able to demonstrate extraordinary and compelling circumstances" to rebut the presumption. *Id.* at 276.

The IJ assumed, for analytical purposes, that Martinez-Nieto's case satisfied all the factors except for the third factor, which concerns whether Martinez Nieto had "mere[] peripheral involvement . . . in the criminal activity, transaction, or conspiracy." Then, the IJ concluded that because Martinez-Nieto "purchased cocaine from a third party," he was a "direct participant in the drug transaction." A18. Thus, the IJ concluded that Martinez-Nieto failed to rebut the presumption that his drug conviction was not a particularly serious crime. The BIA summarily affirmed.

Martinez-Nieto argues that his case satisfies all six factors under *Y-L-*. We find Martinez-Nieto's argument unavailing.[2] Like the IJ and the BIA, we will limit our

_____

[2] The government argues that even if the petition were timely filed, we lack jurisdiction to review the BIA's determination that Martinez-Nieto's drug conviction qualifies as a "particularly serious crime" because it is a determination within the discretion of the Attorney General under 8 U.S.C. § 1252(a)(2)(B)(ii). Gov't Br. 31. But we may review discretionary determinations of what is a particularly serious crime. *See Alaka v. Att'y Gen. of U.S.*, 456 F.3d 88, 95 (3d Cir. 2006), *as amended* (Aug. 23, 2006), *overruled on other grounds by Bastardo-Vale*, 934 F.3d 255. Our scope of review, however, is limited to constitutional and legal claims. 8 U.S.C. § 1252(a)(2)(D). Whether an alien has been convicted of a particularly serious crime is a legal question. *See, e.g.*, *Luziga v. Att'y Gen.*

analysis to the "peripheral involvement" factor. Martinez-Nieto maintains that his involvement in the drug transaction was merely "peripheral because he was purchasing [the drug] for personal use" and that he "had no involvement in any larger drug trafficking scheme." Pet. Br. 17. But the "peripheral involvement" factor turns on whether the petitioner was a "direct actor or perpetrator" in the criminal activity. *Y-L-*, 23 I&N Dec. at 277. Here, Martinez-Nieto's purchase of cocaine makes him a direct actor in the criminal offense. Thus, Martinez-Nieto has not rebutted the "particular serious crime" presumption.[3] Martinez-Nieto is therefore ineligible for withholding from removal.[4]

**B**

The only remaining question is whether substantial evidence supports the BIA's conclusion that Martinez-Nieto was not eligible for deferral of removal under the CAT. It does.

To be eligible for deferral of removal under the CAT, an alien must show that it is "more likely than not that he . . . would be tortured if removed to the proposed country of

---

*of U.S.*, 937 F.3d 244, 251–54 (3d Cir. 2019) (reviewing a discretionary particularly serious crime determination); *Kaplun v. Att'y Gen. of U.S.*, 602 F.3d 260, 267–68 (3d Cir. 2010) (same).

[3] We need not address Martinez-Nieto's suggestion that "[s]imply purchasing a controlled substance for personal use should not bar a person from being able to meet the six factors of *Y-L*-[,]" Pet. Br. 17, because that is a policy determination of the Attorney General. Nor will we accept his invitation to reconsider the IJ's weighing of evidence because that is not a legal question. Thus, we lack jurisdiction to entertain it. *See Chiao Fang Ku v. Att'y Gen. of U.S.*, 912 F.3d 133, 144 (3d Cir. 2019) (citation omitted); *Jarbough v. Att'y Gen. of U.S.*, 483 F.3d 184, 188–89 (3d Cir. 2007).

[4] Martinez-Nieto also argues that he is entitled to withholding because he is a member of a particular social group. We need not address this argument since we conclude that Martinez-Nieto is ineligible for withholding of removal because of his drug conviction.

removal." *Kamara v. Att'y Gen. of U.S.*, 420 F.3d 202, 212–13 (3d Cir. 2005) (citation omitted) (quoting 8 C.F.R. § 208.16(c)(2)). An IJ must address "(1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture?" *Kaplun*, 602 F.3d at 271. Because Martinez-Nieto fears torture from nongovernmental actors, he must also show that the Mexican government would "consent or acquiesce" to the torture. *Myrie v. Att'y Gen. of U.S.*, 855 F.3d 509, 515 (3d Cir. 2017). "[A]n alien can satisfy the burden established for CAT relief by producing sufficient evidence that the government in question is *willfully blind* to such activities." *Silva-Rengifo v. Att'y. Gen. of U.S.*, 473 F.3d 58, 65 (3d Cir. 2007) (emphasis added).

The IJ's decision applied these standards and was supported by substantial evidence. First, the IJ found that there was a low likelihood of kidnapping of a physically disabled person. *See* A24. Even assuming a clear probability of kidnapping, Martinez-Nieto did not show that he would subsequently be tortured. *See id.* The IJ found that there was no uniform treatment of kidnapping victims—some were killed, but others were released after paying a ransom. *Id.* Moreover, the IJ relied on a U.S. Department of State country conditions report to conclude that "there [was] no indication that" "complain[t]s of alleged torture" "occurred in the context of kidnapping specifically or involved U.S. deportees or those with a disability." *Id.*

Second, the IJ concluded that even if it were more likely than not that Martinez-Nieto would be tortured, he did not establish that the Mexican government would acquiesce to the torture. *See* A24–25. The IJ recounted extensive evidence from a country

9

conditions report showing that the Mexican government was taking aggressive action to reduce police corruption and kidnappings. Moreover, the IJ explained that Martinez-Nieto provided no other relevant evidence that the Mexican government was willfully blind to the torture of disabled individuals with ties to the United States. The BIA affirmed the IJ's conclusions.

We are not persuaded by Martinez-Nieto's argument that the IJ should have given more weight to circumstantial evidence of the likelihood of future torture. Under the substantial evidence standard, we consider only whether "a reasonable fact finder could make a particular finding on the administrative record[.]" *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003). "Substantial evidence is more than a mere scintilla." *Mendoza-Ordonez v. Att'y Gen. of U.S.*, 869 F.3d 164, 170 n.15 (3d Cir. 2017) (citation omitted). For the reasons stated in the IJ's decision, we are convinced that the BIA's order in this case meets this low threshold.

\*     \*     \*

For all these reasons, we will deny the petition to review the BIA's order.

10