**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2239
_____

WILSON N. GUADALUPE,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A096-432-645)
Immigration Judge:  Annie S. Garcy

Argued on December 11, 2019

Before:  RESTREPO, ROTH and FISHER, Circuit Judges

(Opinion filed February 26, 2020)

Marcia Kasdan        (**ARGUED**)
Law Offices of Marcia S. Kasdan
127 main Street
1st Floor
Hackensack, NJ 07601

         Counsel for Petitioner

Lindsay Corliss        (**ARGUED**)
United States Department of Justice
Office of Immigration Litigation
Room 2207
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

         Counsel for Respondent

---

O P I N I ON

---

**ROTH**, <u>Circuit Judge</u>:

In *Pereira v. Sessions*,[1] the Supreme Court held that a Notice to Appear (NTA) that omits the time and date of appearance does not stop a noncitizen's continuous residency period. The issue before us is whether *Pereira* abrogated our

---

[1] 138 S. Ct. 2105 (2018).

2

decision in *Orozco-Velasquez v. Attorney General*,[2] where we held that an NTA that omits the time and date may be "cured" with a later Notice of Hearing that provides the missing information. We now hold that *Pereira* does abrogate *Orozco-Velasquez.* It is our conclusion that the Department of Homeland Security (DHS) may no longer rely on a Notice of Hearing to cure a defective NTA.

## I. FACTS

Wilson Guadalupe came to the United States from Ecuador in November 1998. In 2001, he met Raquel Torres, a United States citizen. They married in February 2003. Torres filed an "immediate relative" petition on behalf of Guadalupe, and he was granted conditional permanent resident status.

Guadalupe's marriage to Torres soured quickly and the couple divorced in 2006. Shortly thereafter, Guadalupe applied for removal of the conditional basis of his permanent resident status, claiming that, despite his divorce from Torres, the marriage had not been entered into for the purpose of procuring Guadalupe's admission to the United States as an immigrant. United States Citizenship and Immigration Services (USCIS) interviewed Guadalupe about his marriage to Torres. He maintained that their marriage was bona fide. Torres, however, signed an affidavit, stating that Guadalupe married her for immigration purposes. USCIS concluded that Guadalupe's marriage to Torres had not been in good faith; on April 30, 2007, USCIS terminated Guadalupe's conditional resident status.

---

[2] 817 F.3d 78 (3d Cir. 2016).

Guadalupe was then placed in removal proceedings. On May 11, 2007, DHS sent him an NTA. The NTA omitted the date and time for the removal hearing, indicating that the date and time would be set later. Four days later, the Immigration Court mailed Guadalupe a Notice of Hearing that contained the date and time. Guadalupe, along with his counsel, attended the hearing before the IJ on June 5, 2007. The IJ took additional testimony on October 23, 2008. On November 6, the IJ denied Guadalupe's motion for relief from removal and ordered him to voluntarily depart or be removed. The BIA affirmed. Guadalupe failed to depart and has remained in the United States since then.

In June 2018, the Supreme Court decided *Pereira v. Sessions*. *Pereira* held that where, as here, an NTA does not contain the date or time for the hearing, the NTA "does not trigger the stop-time rule,"[3] and a noncitizen continues to accrue time towards the ten years of continuous residence required to apply for cancellation of removal.

Guadalupe moved to reopen his case based on *Pereira*. He argued that, because his NTA did not contain the date and time for his hearing, it did not stop the clock on his continuous residency period and that he had now accrued the ten years of continuous residency required to apply for cancellation of removal.[4] The BIA denied the motion, relying on its decision

---

[3] 138 S. Ct. at 2110.

[4] 8 U.S.C. § 1229b(b)(1) provides that "Nonpermanent residents, . . . who are subject to removal proceedings and have accrued 10 years of continuous physical presence in the United States, may be eligible for a form of discretionary relief known as cancellation of removal." Under the so-called "stop-time

4

in *Matter of Bermudez-Cota*, which held that a Notice of Hearing with the date and time could cure a defective NTA for jurisdictional purposes.[5] The BIA noted that Guadalupe had received the notice of the date and time because he had appeared for his hearing. Guadalupe filed this petition for review.

## II. DISCUSSION

We have jurisdiction over this case as a timely petition for review of a final order of removal under 8 U.S.C. § 1252(a)(1) and § 1252(b)(1).[6] Cancellation of removal is an exercise of the BIA's discretion that we typically lack jurisdiction to review, but we may nevertheless review the decision if "based on a false legal premise."[7] The question here is a legal one and thus is subject to de novo review.[8]

---

rule," set forth in § 1229b(d)(1)(A), however, the period of continuous physical presence is "deemed to end . . . when the alien is served a notice to appear under section 1229(a)." *Pereira*, 138 S.Ct. at 2109.

[5] *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 447 (BIA 2018).

[6] In *Nkomo v. Attorney General*, 930 F.3d 129 (3d Cir. 2019), appellant argued that an incomplete Notice to Appear did not confer subject matter jurisdiction over removal proceedings. We held to the contrary – that *Pereira* does not implicate the IJ's authority to adjudicate. Nor does *Pereira* implicate the IJ's jurisdiction to adjudicate the stop-time issue here.

[7] *Pllumi v. Att'y Gen. of United States*, 642 F.3d 155, 160 (3d Cir. 2011).

[8] *See Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir. 2003).

This case presents a single issue: In removal proceedings, does *Pereira v. Sessions* prohibit DHS from curing a defective NTA, which has triggered the stop-time rule, with a subsequent Notice of Hearing which contains the missing information?[9] We had held before *Pereira* that DHS could cure a defective NTA with a supplemental Notice of Hearing.[10] After *Pereira*, the Sixth Circuit in *Garcia-Romo v. Barr*[11] and the BIA in *Matter of Mendoza-Hernandez*[12] have held that DHS may cure a defective NTA with a Notice of Hearing that includes the date and time of the hearing.[13] We

---

[9] The government has made a tangential argument that Guadalupe's motion to reopen was untimely. But Guadalupe filed a motion to reopen sua sponte, which the BIA may entertain "at any time." *See* 8 C.F.R. § 1003.2(a). Regardless, we decline to address the issue of timeliness as we "may uphold agency action only on the grounds that the agency invoked when it took that action." *Michigan v. EPA*, 135 S. Ct. 2699, 2710 (2015) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). Here, the BIA ruled on the merits of Guadalupe's claim, making no mention of timeliness.

[10] *Orozco-Velasquez*, 817 F.3d 78.

[11] 940 F.3d 192 (6th Cir. 2019).

[12] 27 I. & N. Dec. 520 (BIA 2019).

[13] Guadalupe directs this Court to the Ninth Circuit's opinion in *Lopez v. Barr*, 925 F.3d 396 (9th Cir. 2019), but the Ninth Circuit subsequently granted rehearing en banc, withdrawing the *Lopez* opinion. Although other circuits have suggested that the government cannot cure a defective NTA with a subsequent notice of hearing, they did not squarely address the issue Guadalupe raises. *See Ortiz-Santiago v. Barr*, 924 F.3d 956, 962 (7th Cir. 2019) (concluding that the government should not send an incomplete Notice to Appear and later "fill[] in the

hold that a defective NTA may not be cured by a subsequent Notice of Hearing, containing the omitted information.

It is our interpretation of *Pereira* that it establishes a bright-line rule:

> A putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a "notice to appear under section 1229(a)," and so does not trigger the stop-time rule."[14]

The language is clear. *Pereira* holds that an NTA shall contain all the information set out in section 1229(a)(1). An NTA which omits the time and date of the hearing is defective. To file an effective NTA, the government cannot, in maybe four days or maybe four months, file a second – and possibly third – Notice with the missing information. And it makes sense to have such a bright-line rule: The ability of the noncitizen to receive and to keep track of the date and place of the hearing, along with the legal basis and cited acts to be addressed at the hearing, is infinitely easier if all that information is contained in a single document – as described in

---

blanks for time and place" but holding that this deficiency was not of jurisdictional significance); *Perez-Sanchez v. United States Att'y Gen.*, 935 F.3d 1148, 1154 (11th Cir. 2019) (citing *Ortiz-Santiago*, 924 F.3d at 962) ("Under *Pereira*, . . . a notice of hearing sent later might be relevant to a harmlessness inquiry, but it does not render the original NTA non-deficient.").

[14] *Pereira*, 138 S. Ct. at 2113-14.

the statute.[15]

Moreover, it seems to us to be no great imposition on the government to require it to communicate all that information to the noncitizen in one document. If a notice is sent to the noncitizen with only a portion of the statutorily required information, a valid NTA can easily be sent later which contains all the required information in one document – at such time as the government has gathered all that information together. The complete NTA would then trigger the stop-time rule.

The government argues, however, that the BIA's decision in *Matter of Mendoza-Hernandez* should be given *Chevron*[16] deference as a reasonable reading of an ambiguous statute. There, the BIA relied on *Pereira*'s position that "the fundamental purpose of notice is to convey essential information to the alien, such that the notice creates a reasonable expectation of the alien's appearance at the removal proceeding." [17] The BIA determined that this purpose can be served just as well by two or more documents as it could by one.[18]

We conclude, however, that *Chevron* deference is

---

[15] We do note that in *Pereira* the Court left "for another day whether a putative notice to appear that omits any of the other categories of information enumerated in § 1229(a)(1) triggers the stop-time rule." 138 S. Ct. at 2113 n. 5.

[16] *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984).

[17] *Matter of Mendoza-Hernandez*, 27 I. & N. Dec. at 531.

[18] *Id.*

8

inapplicable here because we are not merely interpreting the stop-time rule.[19] Rather, we are deciding as a matter of law whether the Supreme Court's decision in *Pereira* forecloses our interpretation of the statute in *Orozco-Velasquez.*

We start this analysis with an overview of the statutory scheme. Nonpermanent residents who have "10 years of continuous physical presence in the United States" may apply for cancellation of removal.[20] But, under the stop-time rule, 8 U.S.C. § 1229b(d)(1), this period of continuous residence ends when the noncitizen "is served a notice to appear under section 1229(a)."[21] Section 1229(a)(1), in turn, sets out the information to be provided in an NTA as follows.

> (A) The nature of the proceedings against the alien.
> (B) The legal authority under which the proceedings are conducted.
> (C) The acts or conduct alleged to be in violation of law.
> (D) The charges against the alien and the statutory provisions alleged to have been violated
> . . .
> (G)    (i) The time and place at which the

---

[19] *See Akins v. FEC*, 101 F.3d 731, 740 (D.C. Cir. 1996) (en banc), *vacated on other grounds*, 524 U.S. 11 (1998) ("There is therefore no reason for courts—the supposed experts in analyzing judicial decisions—to defer to agency interpretations of the Court's opinions.").
[20] *Pereira*, 138 S. Ct. at 2109.
[21] 8 U.S.C. § 1229b(d)(1).

proceedings will be held.

(ii) The consequences under section 1229a(b)(5) of this title of the

failure, except under exceptional circumstances, to appear at such proceedings.[22]

Before *Pereira*, we held in *Orozco-Velasquez* "that an NTA served 'under section 1229(a)' is effective, for purposes of the 'stop-time' rule, only when it includes each of the items that Congress instructs 'shall be given in person to the alien.'"[23] That could be done, we held, with a "combination of notices, properly served on the alien charged as removable, [that] conveys the *complete* set of information prescribed by § 1229(a)(1)."[24]

The Supreme Court in *Pereira* confirmed that the time and place requirement in § 1229(a)(1) is substantive. *Pereira* held that § 1229(a) "speak[s] in definitional terms, at least with respect to the 'time and place at which the proceedings will be held,'"[25] and that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a)' and therefore does not trigger the stop-time rule."[26] *Pereira*, however, rejected the idea that an incomplete NTA could stop the time on a noncitizen's period of continuous residence.[27] If § 1229(a)(1)

---

[22] 8 U.S.C. § 1229(a)(1).

[23] *Orozco-Velasquez*, 817 F.3d at 83.

[24] *Id.*

[25] *Pereira*, 138 S. Ct. at 2116.

[26] *Id.* at 2110.

[27] *Id.* at 2116 (quoting *id.* at 2126 (Alito, J., dissenting)).

10

defines elements that make an NTA complete, the stop-time rule cannot be satisfied by an NTA which does not notify the noncitizen of the elements of the date and time and place of the hearing.

The NTA that Guadalupe received did not contain the time and date of the proceeding. It did not therefore satisfy the statutory requirements for a Notice to Appear. The Notice of Hearing that Guadalupe received included the time and date but it could not trigger the stop-time rule because it made no mention of the other requirements of an NTA, other than to note Guadalupe's file number. Thus, neither document by itself was a proper NTA sufficient to trigger the stop-time rule.

The government's contrary interpretation is unconvincing. The government contends that § 1229(a)(1) requires merely written notice rather than one written document; it argues that § 1229(a)'s language is properly understood as applying to information rather than to a particular document. We find this interpretation to be inconsistent with the statutory language.

The government also looks to the Dictionary Act to support reading "a notice to appear" in the stop-time rule to allow for more than one document. Under the Dictionary Act, "words importing the singular include and apply to several persons, parties, or things."[28] But the Supreme Court "has relied on this directive when the rule is 'necessary to carry out the evident intent of the statute.'"[29] Here, however, in view of

---

[28] 1 U.S.C. § 1.

[29] *CTS Corp. v. Waldburger*, 573 U.S. 1, 15–16 (2014) (quoting *United States v. Hayes*, 555 U.S. 415, 422 n.5 (2009)).

the clarity of the language of the statute, it is not necessary to rely on the Dictionary Act.

Nor do we agree with the government that the BIA's error was harmless.[30] "[W]e will view an error as harmless and not necessitating a remand to the BIA when it is highly probable that the error did not affect the outcome of the case."[31] The government rests its theory of harmlessness on the fact that Guadalupe appeared for his hearing. But the correct inquiry is whether the BIA's legal error affected the outcome of Guadalupe's motion to reopen. It has. The BIA's misreading of the stop-time rule was its sole reason for rejecting Guadalupe's motion to reopen. The BIA found Guadalupe ineligible for cancellation of removal based on an incorrect legal premise. That error was not harmless.

Rejecting the two-step notification process may seem overly formalistic in this case. After all, the Immigration Court

_____

[30] Guadalupe contends that the government waived its harmless error argument, but even when the government waives harmless error, "we may still consider the issue." *United States v. Davis*, 726 F.3d 434, 445 n.8 (3d Cir. 2013). Although the *Chenery* doctrine typically limits courts to considering only those rationales relied on by the agency, *see, e.g.*, *Michigan*, 135 S. Ct. at 2710 (citing *Chenery Corp.*, 318 U.S. at 87 (reciting "the foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action"), we nevertheless apply harmless error review in immigration cases. *Li Hua Yuan v. Att'y Gen. of U.S.*, 642 F.3d 420, 427 (3d Cir. 2011).

[31] *Li Hua Yuan*, 642 F.3d at 427.

sent Guadalupe his Notice of Hearing a mere four days after DHS sent his Notice to Appear, and he attended the hearing. But the government has the power to remedy this scenario in the future for countless others, in other situations. Requiring one complete NTA does not "prevent DHS and the Immigration Courts from working together to streamline the scheduling of removal proceedings";[32] nor does it prohibit DHS, when it has compiled all the information required by § 1229(a)(1), from sending out a complete NTA that includes the date and time of the hearing.

## III. CONCLUSION

We conclude that, for purposes of the stop-time rule, a deficient NTA cannot be supplemented with a subsequent notice that does not meet the requirements of 8 U.S.C. § 1229(a)(1). Because the BIA reached a contrary conclusion in denying Guadalupe's motion to reopen, we will grant the petition for review, vacate the BIA's removal order, and remand this case to the BIA for further proceedings on Guadalupe's motion for relief from removal.

---

[32] *Pereira*, 138 S. Ct. at 2115 n.6.