**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-1869

_____

GIUSEPPE GIUDICE, aka Joe Giudice,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent

_____

On Petition For Review of an Order of the Board of Immigration Appeals
(Agency No. A031-105-490)
Immigration Judge: John P. Ellington

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 21, 2019

_____

Before: CHAGARES, MATEY, and FUENTES, *Circuit Judges*
(Opinion filed: April 29, 2020)

_____

OPINION**

_____

_____

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

FUENTES, *Circuit Judge*.

Petitioner, Giuseppe Giudice, also known as Joe Giudice, seeks review of an order of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") decision denying his motion to terminate removal proceedings. For the reasons that follow, we will deny the petition for review.

I.

Giudice is a citizen of Italy who was admitted to the United States as a lawful permanent resident in 1971. After his admission, Giudice married a United States citizen and raised four children in the United States. Giudice and his wife engaged in multiple schemes to obtain fraudulent mortgages and made fraudulent representations in bankruptcy proceedings. Among these schemes, in December 2006 and February 2007, Giudice fraudulently obtained two home equity lines of credit from Wachovia Bank. For his crimes, Giudice pled guilty to conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349, three counts of bankruptcy fraud under 18 U.S.C. §§ 2, 152, and willful failure to file a federal tax return in violation of 26 U.S.C. § 7203.

In accordance with his plea agreement, Giudice stipulated "the loss resulting from [his] conduct was more than $400,000 but less than $1,000,000."[1] The presentence investigation report stated "[i]n the mail and wire fraud conspiracy, the actual loss on the two charged off Wachovia loans . . . totals $414,588.90" and that "Wells Fargo Bank (formerly Wachovia) incurred actual losses totaling $414,588.90."[2] Ultimately, Giudice

---

[1] A.R. 501.
[2] A.R. 604, 606.

2

was sentenced to 41 months' imprisonment, ordered to pay a fine of $10,000, and ordered to make restitution in the amount of $414,588.90.[3] While Giudice was serving his sentence, the Department of Homeland Security ("DHS") initiated removal proceedings.

DHS initially charged Giudice with inadmissibility under the Immigration and Nationality Act ("INA") Section 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), as an alien convicted of a crime involving moral turpitude, and INA Section 212(a)(2)(B), 8 U.S.C. § 1182(a)(2)(B), as an alien convicted of two or more offenses for which the aggregate sentences of confinement were five years or more. Giudice then contested the basis of his removal proceedings arguing that he could not be charged with inadmissibility because he was not an arriving alien under the Act. Accepting Giudice's argument, DHS withdrew the inadmissibility charges under INA Section 212(a)(2), 8 U.S.C. § 1182(a)(2), and instead charged him as removable under INA Section 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii), as an alien who, after admission, had been convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct; and under INA Section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien who, after admission, had been convicted of an aggravated felony. Giudice contested the charges of removability and, in the alternative, sought relief from removal in the form of cancellation of removal under 8 U.S.C. § 1229b(a).

Rejecting Giudice's arguments, the IJ sustained both removability charges under INA Sections 237(a)(2)(A)(ii) and (iii), ordered Giudice's application for cancellation of

---

[3] A.R. 472, 477, 478.

removal pretermitted, and ordered that Giudice be removed to Italy. Giudice appealed to the BIA. The BIA dismissed the appeal concluding that Giudice was removable as charged. Giudice now petitions this Court for review.

II.[4]

Giudice argues that: (A) he was not convicted of an aggravated felony offense as defined by 8 U.S.C. § 1101(a)(43)(M)(i), because there was no loss to a victim exceeding $10,000; (B) his original Notice to Appear was legally invalid and his amended charges were defective because Giudice had been paroled and not admitted into the United States; and (C) removal proceedings should be terminated for lack of jurisdiction in light of *Pereira v. Sessions*.[5] We address each argument in turn.

A.

DHS charged Giudice with deportability based on his conviction for an aggravated felony as defined by § 1101(a)(43)(M)(i). Under § 1101(a)(43)(M)(i), an aggravated

---

[4] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3). Although we have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a), "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [an aggravated felony]." 8 U.S.C. § 1252(a)(2)(C). "We do, however, have jurisdiction to examine 'constitutional claims or questions of law.'" *Fan Wang v. Att'y Gen.*, 898 F.3d 341, 343 (3d Cir. 2018) (quoting *Catwell v. Att'y Gen.*, 623 F.3d 199, 205 (3d Cir. 2010)). Therefore, we have authority to take up purely legal questions, applying plenary review. *Id.*

[5] 138 S. Ct. 2105 (2018). Petitioner also argues that one of his offenses, willfully failing to file a federal tax return, in violation of 26 U.S.C. § 7203, is not a crime of moral turpitude. However, we need not reach this issue. As the BIA stated, "in the event that [Giudice's] conviction under 26 U.S.C. § 7203 is not one for a crime involving moral turpitude, the Immigration Judge's unchallenged findings that his offenses under 18 U.S.C. §§ 2, 152, 1349 are turpitudinous and do not arise out of a single scheme of misconduct are dispositive of [Giudice's] removability under section 237(a)(2)(A)(ii) of the Act." A.R. 10. On this basis, we decline to address Petitioner's argument as to § 7203.

4

felony is defined as "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." Giudice argues that he was not convicted of an aggravated felony under § 1101(a)(43)(M)(i) because there was no loss to a victim exceeding $10,000.

Specifically, Giudice claims that Wachovia did not sustain any loss because the loan debt owed was written off in a settlement agreement between Wells Fargo, as successor to Wachovia, and the New Jersey State Attorney General, due to Wachovia's "misleading or exploitative" lending practices.[6] Based on that agreement's loan forgiveness, Giudice argues that there was no loss to Wachovia caused by Giudice and that, even if there was a loss, Wells Fargo cannot be considered a "victim." These arguments have no merit.

To determine whether the Government has shown by clear and convincing evidence that an alien's offense involved a loss to a victim exceeding $10,000, courts must use a "circumstance-specific" approach.[7] Critically, immigration courts must use "fundamentally fair procedures, including procedures that give an alien a fair opportunity to dispute a Government claim that a prior conviction involved a fraud with the relevant loss to victims."[8] However, under the circumstance-specific approach, an IJ is not bound by the evidentiary limitations imposed in criminal proceedings.[9] "For example, whereas the modified-categorical approach is limited to the record of conviction (e.g., indictment,

---

[6] Petitioner Br. 7.
[7] *Nijhawan v. Holder*, 557 U.S. 29, 36, 38-39 (2009).
[8] *Singh v. Att'y Gen.*, 677 F.3d 503, 512 (3d Cir. 2012) (quoting *Nijhawan*, 557 U.S. at 41).
[9] *Nijhawan*, 557 U.S. at 42.

5

plea agreement, criminal judgment, etc) and judicial findings of fact . . . the circumstance-specific approach may consider sentencing-related material."[10]

In this case, both the IJ and the BIA found clear and convincing evidence that the loss to Wachovia was greater than $10,000.[11]  The BIA's summary of the record reveals the strength of that evidence:

> In his plea agreement, [Giudice] stipulated that "the loss resulting from" his mail and wire fraud offenses "was more than $400,000 but less than $1,000,000" . . . . During his plea colloquy, [Giudice] acknowledged that he had made these stipulations . . . . A pre-sentence report prepared after the plea agreement reflects that his mail and wire fraud offenses resulted in . . . a total of $414,588.90 in "*actual losses*" to [Wachovia] . . . . Finally, in the judgment the sentencing court ordered [Giudice] to "make restitution in the amount of $414,588.90," stating that the "amount ordered *represents the total amount due to the victim for this loss*."[12]

---

[10] *Singh*, 677 F.3d at 512 (internal citations omitted).

[11] Giudice argues that the BIA engaged in impermissible appellate fact-finding when it referenced sentencing related materials in affirming the IJ's finding of loss.  We disagree. The BIA made no new factual finding of loss.  Instead, the BIA came to the same conclusion as the IJ regarding the amount of loss to Wachovia.  The BIA is entitled to review the record in such circumstances and we have approved of such a review in similar cases. *See Chiao Fang Ku v. Att'y Gen. United States of Am.*, 912 F.3d 133, 139 (3d Cir. 2019) ("[W]e determined that the Board did not go beyond the bounds of proper review by examining the record—including the sole count of the superseding information, the plea colloquy, the presentence investigation report, the 'total loss' specified in the judgment, and the restitution order—to determine whether the petitioner's prior conviction was an 'aggravated felony.'").

[12] A.R. 5-6.

Giudice does not quibble with the amount of money obtained through his mail and wire fraud offenses. Instead, he argues that because his loans were later forgiven, there was no loss. We are not persuaded.

Loss to a victim occurs at the time the defendant gains control of the fraudulently obtained property.[13] Repayment does not "negate a loss that actually occurred."[14] In keeping with that logic, it is irrelevant that Wells Fargo, as successor to Wachovia, later forgave the loans issued as part of an unrelated settlement agreement. A loss occurred when Giudice obtained funds from Wachovia through his fraudulent mortgage applications. Thus, a loss, greater than $10,000, occurred in the present case.

Giudice also argues that Wells Fargo was not a "victim" because Wachovia engaged in misleading or exploitative lending practices. We are not aware of, and neither party cites, any authority creating a "bad victim" exemption under § 1101(a)(43)(M)(i).[15]

---

[13] *See Singh*, 677 F.3d at 518 (stating "[i]f a bank gives a person a loan under false pretenses, then no matter how soon afterwards it detects the fraud, whether one minute or one year, an actual loss results because the person obtains possession of the loan at the direct deprivation of the bank. It doesn't matter how fleetingly the person obtains control. If the person's offense deprives the defrauded party of property, an actual loss occurs to an actual victim under subparagraph (M)(i)").

[14] *Id.*

[15] In support of his argument Petitioner cites *United States v. Litos*, in which the Court declined to consider a bank that acted recklessly, by approving mortgage applications without verifying the solvency of would-be borrowers, to be a victim under the Mandatory Victim Restitution Act of 1996. 847 F.3d 906, 908-09 (7th Cir. 2017). In that case, the Court was concerned with allocating financial recompense to an entity that was equally at fault for the wrongdoing at issue. *Id.* Such concerns are different than those in the immigration context, where an IJ considers the actions of one party and is not tasked with awarding restitution for any misconduct.

Furthermore, we see no reason to interpret the statute to exclude entities like Wachovia, who are both the victim of a crime and the alleged perpetrator of an unrelated wrong. Wachovia became a victim of Giudice's fraud as soon as Giudice obtained money from Wachovia based on his fraudulent conduct. Whether Wachovia also engaged in unrelated illegal conduct is irrelevant to the present analysis and we consider Wells Fargo, as successor to Wachovia, to be a victim under § 1101(a)(43)(M)(i).

For these reasons, we conclude that Giudice's mail and wire fraud offenses caused a loss to a victim greater than $10,000 and that, therefore, he was convicted of an aggravated felony under § 1101(a)(43)(M)(i).

### B.

Next, Giudice raises two procedural arguments. First, he argues that the original Notice to Appear was invalid because it charged him as an applicant for admission instead of as a lawful permanent resident. The Government states that Giudice failed to exhaust this argument before the BIA while Giudice claims that he raised the issue below. Giudice, however, conflates two similar, but distinct, procedural arguments. Before the BIA, Giudice argued that the proceedings should be terminated because a paroled alien cannot be charged as deportable whereas, in his opening brief before this Court, Giudice argues that his Notice to Appear was invalid because it charged him as an applicant for admission.

8

We conclude that these are separate inquiries and therefore we have no jurisdiction to review the present claim, which was not exhausted below.[16]

Second, Giudice argues that even if amendment of the original Notice to Appear were possible, the amended charges were defective because admission was a necessary legal element and Giudice had been paroled and not admitted into the United States. Although this second argument was raised before the BIA, Giudice failed to raise this issue with the IJ. Specifically, Giudice argued to the IJ that he could not be charged as an arriving alien, a position that caused DHS to reexamine Giudice's record and, ultimately, to charge him as an alien who had "been admitted to the United States" under the deportability grounds of 8 U.S.C. § 1227.[17] After DHS's amended charge was made, Giudice proceeded before the IJ without objection.[18] Based on this record, the BIA concluded that Giudice "had a full and fair opportunity to raise this issue below" and because "he is raising it for the first time on appeal, [the BIA] will not address it."[19] We conclude that the BIA did not err in declining to address this issue raised for the first time on appeal and we similarly decline to address it now.[20]

---

[16] *See* 8 U.S.C. § 1252(d)(1) (requiring exhaustion of administrative remedies); *Castro v. Att'y Gen.*, 671 F.3d 356, 365 (3d Cir. 2012) ("A petitioner's failure to exhaust an issue by presenting it to the BIA deprives us of jurisdiction to consider that issue.").

[17] A.R. 357.

[18] A.R. 176-90.

[19] A.R. 11.

[20] *See Prabhudial v. Holder*, 780 F.3d 553, 554 (2d Cir. 2015) (holding that "the BIA may apply the doctrine of waiver to refuse to consider an argument that was not raised before an IJ").

C.

Finally, Giudice argues that the BIA should have terminated his removal proceedings pursuant to *Pereira v. Sessions*,[21] because his Notice to Appear did not contain the date or time of his initial hearing. This omission, he argues, deprived the IJ of jurisdiction over the removal proceedings. We recently spoke on this issue in *Nkomo v. Attorney General*,[22] in which we held that the absence of a designated date and time for an initial hearing in a Notice to Appear does not deprive an IJ of jurisdiction to conduct removal proceedings. We see no reason to revisit that holding today.

III.

For the foregoing reasons, we will deny the petition for review.

---

[21] 138 S. Ct. 2105 (2018).

[22] 930 F.3d 129 (3d Cir. 2019); *see also Guadalupe v. Att'y Gen.*, 951 F.3d 161, 163, n.6 (3d Cir. 2020) (noting that *Nkomo* held that *Pereira* does not implicate the IJ's authority to adjudicate).