**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3975

_____

JOSE ARMANDO ESCOBAR-LOPEZ,
Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(Agency No. A208-276-539)
Immigration Judge: Shena Chen
_____

Argued September 29, 2020
_____

Before: SHWARTZ, PHIPPS, and SCIRICA, Circuit Judges.
_____

(Opinion Filed: October 30, 2020)
_____

Blair Connelly
Alysha M. Naik [ARGUED]
Latham & Watkins
885 Third Avenue

Suite 1000
New York, NY 10022

    Counsel for Petitioner

Jessica D. Strokus, [ARGUED]
Anthony C. Payne
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 848
Ben Franklin Station
Washington, DC 20044

    Counsel for Respondent

_____

OPINION[*]

_____

SHWARTZ, <u>Circuit Judge</u>.

Jose Armando Escobar-Lopez petitions for review of an order of the Board of Immigration Appeals ("BIA"), which affirmed the Immigration Judge's ("IJ") order denying his motion to reopen removal proceedings and to rescind his in absentia removal order.  Because there is a factual question concerning whether Escobar-Lopez received a notice to appear for his removal proceeding that contained an address for the court before whom he was to appear and to whom he should have conveyed his address changes, we will grant the petition and remand to the BIA with instructions that it remand to the IJ to conduct a hearing to address this issue and for further proceedings.

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

I

A

Escobar-Lopez is a native and citizen of El Salvador. After multiple moves within El Salvador to avoid abuse by gangs and following the kidnapping of his grandmother, he fled El Salvador and entered the United States in 2015 at seventeen years old. Upon arrival, he was placed in the custody of the Office of Refugee Resettlement as an Unaccompanied Alien Child and served with a Notice to Appear ("NTA"), which he refused to sign. The record contains two different NTAs, both dated June 19, 2015: one that Escobar-Lopez claims he received ("NTA 1") and one that he claims he never saw and that was later filed with the Immigration Court ("NTA 2").

NTA 1 stated that the hearing was to take place at "a date to be set" and "a time to be set." App. 132. NTA 1 also specified that Escobar-Lopez was to "notify the Immigration Court immediately by using Form EOIR-33" whenever he changed his address. App. 133. The record does not include an EOIR-33 and, as the image below reflects, NTA 1: (1) did not include an address for Immigration Court, instead stating, "TO BE DETERMINED" in the address line, and (2) was signed on behalf of Officer Benjamin Salas, Jr., "by AP" (who appears to be Border Patrol Agent Alejandro G. Perez). App. 132-33.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.
☐ Section 235(b)(1) order was vacated pursuant to: ☐ 8CFR 208.30(f)(2) ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:
TO BE DETERMINED

_____
(Complete Address of Immigration Court, Including Room Number, if any)

on _a date to be set_ at _a time to be set_ to show why you should not be removed from the United States based on the
(Date)        (Time)

charge(s) set forth above.        BENJAMIN SALAS JR        ACTING PATROL AGENT IN CHARGE
(Signature and Title of Issuing Officer)

Date: June 19, 2015        McAllen, Texas
(City and State)

See reverse for important information        Form I-862 (Rev. 08/01/07) N

App. 132.

NTA 2 also stated that the hearing was to take place at "a date to be set" and "a time to be set" and specified that Escobar-Lopez was to "notify the Immigration Court immediately by using Form EOIR-33" whenever he changed his address. App. 27-28. However, on a line below text reading "YOU ARE ORDERED to appear before an Immigration Judge of the United States Department of Justice," NTA 2 included a handwritten address of "970 Broad Street Room 1200[,] Newark, NJ 07102," followed by Officer Salas's signature, this time signing for himself (see image below). App. 27.

EXHIBIT # 9

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.
☐ Section 235(b)(1) order was vacated pursuant to: ☐ 8CFR 208.30(f)(2) ☐ 8CFR 235.3(b)(5)(iv)

SEP 21 2017
ELISE MANUEL
IMMIGRATION JUDGE

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:
TO BE DETERMINED
970 Broad Street Room 1200 Newark, NJ 07102

_____
(Complete Address of Immigration Court, Including Room Number, if any)

on _a date to be set_ at _a time to be set_ to show why you should not be removed from the United States based on the
(Date)        (Time)

charge(s) set forth above.        BENJAMIN SALAS JR        ACTING PATROL AGENT IN CHARGE
(Signature and Title of Issuing Officer)

Date: June 19, 2015        McAllen, Texas
(City and State)

App. 27. In addition, the "Subject Refused to Sign" stamp, Officer Perez's signature, the "X" to check boxes, and the agent's signature on the "Subject Refused to Sign" stamp all appear in places different from where they appear on NTA 1. App. 27-28, 132-33. The

4

Government has not explained why there are two NTAs bearing the same date but that are otherwise materially different.

After his processing, Escobar-Lopez lived with his mother and stepfather in an apartment in Lindenwold, New Jersey. The multi-unit apartment building shared a communal mail slot, where the delivered mail dropped to the floor of the shared, first-floor hallway. Five Notices of Hearings, dated between January 29, 2016, and March 20, 2017, were sent to the Lindenwold address. Escobar-Lopez and his family assert that they never received these notices.

In 2016, Escobar-Lopez and his family moved from New Jersey to Virginia. In 2019, he moved from Virginia to California with his fiancée. Meanwhile, in January 2016, removal proceedings began. Escobar-Lopez did not appear. As a result, on September 21, 2017, the IJ issued an in absentia order directing that Escobar-Lopez be removed.

B

On May 11, 2019, Escobar-Lopez was stopped for a traffic violation in California and arrested pursuant to the IJ's in absentia removal order. He was then transferred into the custody of United States Immigration and Customs Enforcement. While there, Escobar-Lopez submitted a change of address form to the Executive Office for Immigration Review listing his new address as the processing center where he was being held. He thereafter filed a counseled emergency motion to rescind and reopen the removal order, claiming he never received notice informing him when and where to appear. He also requested leave to supplement the motion and a ninety-day extension so

5

he could obtain his immigration file (known as an Alien File or A-File) under the Freedom of Information Act ("FOIA").

Besides his motions and FOIA request, Escobar-Lopez filed an I-589 Application for Asylum and for Withholding of Removal, alerted the IJ that he had received no response to his FOIA request, and renewed his request for leave to supplement the motion to reopen after obtaining his A-File. Seemingly relying on only NTA 2, the IJ denied the motion to rescind and reopen, writing: "Respondent was personally served with the Notice to Appear on 6/19/2015, and a border patrol agent witnessed Respondent's refusal to sign. Respondent has taken no action for nearly 4 years until he was detained by law enforcement." App. 20. Thereafter, the IJ denied Escobar-Lopez's Motion to Reconsider. The IJ did not explicitly address Escobar-Lopez's request for an opportunity to supplement the motion with his A-File.

Escobar-Lopez filed an appeal with the BIA, supported by NTA 1, declarations from himself, his fiancée, and his attorney reflecting that neither Escobar-Lopez nor his family received a Notice of Hearing, and information about the layout of the New Jersey apartment building. Escobar-Lopez also informed the BIA that he had not yet received his A-File.

Escobar-Lopez argued that the IJ erred because she failed to give him an extension of time to obtain his A-File and to amend his motion based on it, thus violating due process. Additionally, he asserted that the record provided a basis to reopen because: (1) the discrepancies in the NTAs suggest that Escobar-Lopez did not receive proper notice;

(2) the NTA he received lacked an address at which he was to appear or provide address updates; and (3) he received no Notice of Hearing.

The BIA dismissed the appeal, reasoning that it would not disturb the IJ's denial of the motion to reopen because (1) Escobar-Lopez was personally served with an NTA; (2) the Newark Immigration Court sent multiple notices to him via regular mail providing the date for his removal hearing and none were returned as undeliverable; (3) he failed to appear at the removal proceeding; and (4) he moved to reopen "far beyond the 180-day filing deadline." App. 15-16. The BIA acknowledged Escobar-Lopez's claim that he did not receive any notices but said that it was his obligation to provide the Immigration Court with address changes using Form EOIR-33. The BIA did not address Escobar-Lopez's assertion that the NTA he received included no address for the court before whom he was to appear and to whom he was to provide any change of address. With respect to Escobar-Lopez's due process argument that the IJ should have provided him a reasonable extension of time to obtain his A-File, the BIA stated that he had "not established that he suffered prejudice from the purported due process violation, as we have determined that a written hearing notice is not necessary in this case." App. 17. Finally, the BIA said that its ruling made it "not necessary to address the respondent's remaining contentions on appeal, including arguments relating to whether the respondent has overcome the presumption that the hearing notice was correctly delivered to his address of record."[1] App. 17. Escobar-Lopez petitions for review.

_____

[1] The arguments, evidence, and rulings show that the arguments presented to us have been exhausted. See Liao v. Att'y Gen., 910 F.3d 714, 718 (3d Cir. 2018) (stating

7

II[2]

To institute a removal proceeding against an alien, the Department of Homeland Security must provide the alien with written notice in person, "or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any." 8 U.S.C. § 1229(a)(1). If such written notice has been properly provided and the alien fails to attend his removal proceeding, the IJ may proceed in absentia and order removal. See 8 U.S.C. § 1229a(b)(5)(A) (empowering IJs to order removal in absentia against "[a]ny alien who, after written notice . . . does not attend a proceeding").

"An in absentia removal order may be rescinded, though, if the alien demonstrates that . . . []he 'did not receive notice' of the hearing." Santana Gonzalez v. Att'y Gen., 506 F.3d 274, 276-77 (3d Cir. 2007) (quoting 8 U.S.C. § 1229a(b)(5)(C)). "As the word 'receive' indicates, the key question in reopening a removal proceeding for lack of notice is not whether the Immigration Court properly mailed the notice to the alien, but whether the alien actually received the notice." Id. at 277 (emphasis and citation omitted). The focus on actual receipt is appropriate because an alien "must be given 'a reasonable

_____

that "a petitioner who gives enough information to put the BIA on notice that he is raising an issue has exhausted the issue, and we have jurisdiction to review it.").

[2] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction under 8 U.S.C. § 1252. We review procedural due process claims de novo. Bonhometre v. Gonzales, 414 F.3d 442, 446 (3d Cir. 2005). "We review the denial of a motion to reopen a removal order entered in absentia for abuse of discretion." Patel v. Att'y Gen., 639 F.3d 649, 651 (3d Cir. 2011) (per curiam) (citation omitted). Thus, "to succeed on the petition for review, [Escobar-Lopez] must ultimately show that the . . . decision was somehow arbitrary, irrational, or contrary to law." Id.; see also Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006) (explaining that we can only "reverse[]" an order denying a motion to reopen if the BIA's decision is "arbitrary, irrational, or contrary to law" (citation omitted)).

8

opportunity to be present at [the] proceeding,'" Sewak v. I.N.S., 900 F.2d 667, 672 (3d Cir. 1990) (alteration in original) (citation omitted), and thereby receive due process, see Khan v. Att'y. Gen., 448 F.3d 226, 236 (3d Cir. 2006) (explaining that due process is violated if an alien is not provided a reasonable opportunity to present his case and prejudice results from the absence of that opportunity). When the record fails to establish whether a petitioner received notice of a hearing, we may remand to the BIA with instructions that it, in turn, remand the proceeding to the IJ for reconsideration of the motion to reopen. See Sewak, 900 F.2d at 668 (remanding when the petitioner asserted that notice was only sent to an attorney not authorized to represent him).

Escobar-Lopez argues that he did not receive notice of when and where to appear and was therefore unable to present his case. The record inexplicably includes two NTAs, both dated June 19, 2015—one includes a hand-written address identifying where to appear (NTA 2), the other does not (NTA 1). Escobar-Lopez asserts he only received NTA 1, the version missing an address. If Escobar-Lopez's claim that he only received NTA 1 is true, then the in absentia removal order violated due process because he had no notice of when or where to appear to present his defense or even information about the court to whom he was to provide address updates.[3] See id. Because the Government has

---

[3] The BIA discusses the NTAs only to note that Escobar-Lopez had a duty to update his address when he moved, and, because he did not fulfill that duty, he was not entitled to relief. The BIA's reliance on the NTA and conclusion that Escobar-Lopez should have updated his address using Form EOIR-33 assumes that he was informed where to send the update. Notably, Form EOIR-33 is not in the record. Moreover, if Escobar-Lopez's claim that he never received an NTA with an address is true, then the BIA improperly faulted Escobar-Lopez for failing to report his changed address.

9

not explained why there are two NTAs or provided evidence about which NTA Escobar-Lopez received, fact-finding is needed to ascertain why two NTAs exist and to determine whether Escobar-Lopez received a notice that identified the location of the Immigration Court before whom he was to appear and to whom he should have sent information about his address. We will therefore grant the petition for review and remand so that the IJ may conduct such fact-finding.[4]

---

[4] Escobar-Lopez has also identified other actions on the part of the IJ and BIA that deprived him of due process. First, the BIA did not consider his evidence and arguments concerning the two different NTAs. The BIA abuses its discretion when it ignores material evidence or fails to explain why it did not credit evidence. Shardar v. Att'y Gen., 503 F.3d 308, 315-17 (3d Cir. 2007). Here, the BIA had both NTAs but did not explain why it concluded Escobar-Lopez received NTA 2 rather than NTA 1. It thus abused its discretion.

Second, the BIA ignored evidence that (a) both NTAs lacked a date and time of the hearing, and (b) Escobar-Lopez did not receive the subsequent Notices of Hearing, which would have cured the defect. Guadalupe v. Att'y Gen., 951 F.3d 161, 164 (3d Cir. 2020). Escobar-Lopez has presented evidence that undermines the presumption that he received such notices. See Santana Gonzalez, 506 F.3d at 278-80 (explaining that a weaker presumption of delivery applies when a Notice of Hearing is sent by ordinary mail). Escobar-Lopez presented: (1) declarations from himself, his fiancée, and his attorney concerning nonreceipt of the Notices of Hearing mailed to the New Jersey apartment; (2) information about the communal mail slot; and (3) steps taken in response to learning about the in absentia order. The BIA's failure to consider this evidence violated its own precedent. See, e.g., Matter of M-R-A-, 24 I. & N. Dec. 665, 674 (BIA 2008). In evaluating whether the presumption has been rebutted, the BIA has created a flexible test that, among other things, places significant emphasis on a "respondent's due diligence in promptly seeking to redress the situation by obtaining counsel and requesting reopening of the proceedings" when he became aware of the in absentia order. Id. at 676. Here, within ten days of learning of the in absentia order, Escobar-Lopez hired an attorney, moved to reopen, and alerted the Immigration Court of his new address. At a minimum, the IJ and BIA should have applied the relevant test and explained why the evidence was inadequate to rebut the presumption of receipt.

Finally, the IJ's and BIA's failures to provide an extension of time for Escobar-Lopez to obtain his A-File violated his right to due process. See Dent v. Holder, 627 F.3d 365, 374 (9th Cir. 2010) (holding that the absence of an A-File "denied [the petitioner] an opportunity to fully and fairly litigate his removal and his defensive

## III

For the foregoing reasons, we will grant the petition and remand for further proceedings.

---

citizenship claim"). Escobar-Lopez requested time to obtain his file but the IJ provided no reason for denying the request. See Khan, 448 F.3d at 233 (explaining that a motion for continuance may be granted "for good cause shown" (citation omitted)). While the BIA, for its part, referred to the absence of the A-File, it still concluded that Escobar-Lopez had "not established that he suffered prejudice from the purported due process violation. . . ." App. 17. Meanwhile, the BIA had before it two NTAs, and given the factual dispute concerning which one Escobar-Lopez received, good cause supported the requested extension to clarify this discrepancy. Thus, it was an abuse discretion to fail to address and in effect deny the request for an extension.

For these additional reasons, remand is warranted.

*Escobar-Lopez v. Attorney General of the United States*, No. 19-3975.

PHIPPS, *Circuit Judge*, dissenting.

Petitioner did not present the due process argument on which he prevails to the Immigration Court or to the BIA, and by statute that unexhausted argument is beyond judicial review. *See* 8 U.S.C. § 1252(d)(1). In his opening brief, Petitioner for the first time argued that the notice to appear violated due process by not including contact information for submitting change-of-address paperwork. Petitioner raised other due process challenges administratively, such as the denial of an extension of time while he waited for the release of his A-file, but those are not meritorious. Petitioner also raised a *jurisdictional* challenge to the lack of contact information on the notice to appear, but that argument goes to the regulatory authority of the Immigration Court and does not implicate due process concerns. *See Nkomo v. Att'y Gen.*, 930 F.3d 129, 134 (3d Cir. 2019) (holding that a notice to appear without the time and place of the initial removal hearing suffices to establish the jurisdiction of the Immigration Court). If Petitioner could mix-and-match his arguments presented below – coupling one of his legal rationales (due process) with a factual dispute that was previously associated with another legal theory (the alleged lack of contact information on the notice to appear as basis for a jurisdictional challenge) – then his present contention would have been preserved. But the exhaustion requirement, while liberally construed in favor of petitioners, *see Joseph v. Att'y Gen.*, 465 F.3d 123, 126 (3d Cir. 2006), still has limits, and it does not allow cross-pollinating of that nature, such that any legal grounds raised below can be paired with any fact invoked below to suffice for exhaustion. Instead, exhaustion requires a

straightforward presentation of the challenged issue.  *See Wu v. Ashcroft*, 393 F.3d 418, 422 & n.4 (3d Cir. 2005); *see also Bhiski v. Ashcroft*, 373 F.3d 363, 368 (3d Cir. 2004) (upholding the sufficiency of an administrative notice of appeal that made "the BIA aware of precisely what issues were being appealed").  At the administrative level, Petitioner's due process challenge was not tethered to the lack of contact information on the notice to appear, and because that falls short of exhaustion, I respectfully dissent and would deny the petition.