NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-3513
_____

VICTOR HUGO MEJIA-ESPINOZA,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA

_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
(BIA-1 : A090-695-156)
Immigration Judge: David Cheng

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 22, 2020

Before: AMBRO, PORTER, and ROTH, <u>Circuit Judges</u>

(Opinion filed February 17, 2021)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AMBRO, Circuit Judge

Petitioner Victor Hugo Mejia-Espinoza petitions for review of an order of the Board of Immigration Appeals ("BIA"). It dismissed his appeal after an immigration judge ("IJ") denied his claim for relief and ordered his removal. We dismiss the petition in part and deny it in part.

## I.

Mejia-Espinoza, a citizen of Ecuador, entered the United States without inspection in 2005 or before.[1] He married in 2013 and, with his wife, has three minor children who are United States citizens. In 2010, the Department of Homeland Security ("DHS") began removal proceedings, serving Mejia-Espinoza with a Notice to Appear ("NTA") that did not specify a hearing date and time. A few weeks later, DHS followed up the NTA with a hearing notice setting the date and time.

Mejia-Espinoza conceded removability but sought relief in the form of cancellation of removal. An immigration judge ("IJ") held a hearing in 2018, at which Mejia-Espinoza alone testified. The IJ then denied cancellation of removal, explaining that Mejia-Espinoza had not demonstrated the ten years of continuous presence in the United States that is statutorily required for relief. *See* 8 U.S.C. § 1229b(b)(1)(A). While DHS conceded he had been in the United States since 2005, the record was unclear as to how long he had been present before that, and, under the so-called "stop-time rule," the

---

[1] He claims he first entered the country in 1997, but, as noted below, the immigration judge concluded there was insufficient evidence of his presence before 2005.

2

period terminated in 2010 (hence five years short) with service of the NTA. *See id.* § 1229b(d)(1).

The IJ concluded alternatively that Mejia-Espinoza had not demonstrated a separate statutory requirement for cancellation of removal: that his removal would result in "exceptional and extremely unusual hardship" to his U.S. citizen children. *See id.* § 1229b(b)(1)(D). He explained that Mejia-Espinoza's wife did not provide a letter or testify to corroborate his role in supporting their children, and that the children do not suffer from any medical issues that would cause such an unusual hardship. The IJ also noted he would decline, as a matter of discretion, to grant cancellation of removal because Mejia-Espinoza admitted during the hearing that he left the United States and gained readmittance using someone else's passport.

Mejia-Espinoza appealed to the BIA, arguing, among other things, that (1) the failure of the NTA to specify a hearing date and time deprived the IJ of jurisdiction, and (2) this same deficiency meant that the stop-time rule was not triggered in 2010. The BIA dismissed the appeal. In rejecting the first argument, the BIA relied on our decision in *Nkomo v. Attorney General*, 930 F.3d 129, 133 (3d Cir. 2019), in which we held that the lack of a hearing date and time on an NTA does not deprive an IJ of jurisdiction. The BIA then noted that the second argument was "foreclosed" by its own precedent holding that service of a hearing notice cures a deficient NTA and thus triggers the stop-time rule. A.R. 4 (citing *In re Mendoza-Hernandez*, 27 I. & N. Dec. 520 (BIA 2019)). But rather than resting its holding as to cancellation of removal on that basis alone, the BIA held that "even assuming [Mejia-Espinoza] could establish the requisite continuous physical

3

presence, we affirm the [IJ]'s determination that [he] did not demonstrate exceptional and extremely unusual hardship to his [U.S.] citizen children." *Id.* The BIA "also affirm[ed] the [IJ]'s determination" that Mejia-Espinoza did not merit a favorable exercise of discretion. A.R. 4. He petitions us for review.[2]

II.[3]

We begin with Mejia-Espinoza's argument that the IJ lacked jurisdiction due to the defect in the NTA. He concedes that *Nkomo* forecloses this argument but argues that we should overrule it. Our panel may not do so, as *Nkomo* is precedential. *See, e.g.*, *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293 n.13 (3d Cir. 2018).

Mejia-Espinoza next argues that the BIA erred in concluding that the hearing notice cured the defect in the NTA such that it triggered the stop-time rule. He notes that, in the time since the BIA decided this case, we have rejected its precedent on this issue. *See Guadalupe v. Att'y Gen.*, 951 F.3d 161, 167 (3d Cir. 2020) (rejecting *In re Mendoza-*

---

[2] While his petition was pending, Mejia-Espinoza moved to remand this matter to the BIA so that he could present new evidence regarding the hardship that his removal would cause in light of the current COVID-19 pandemic. A separate motions panel of our Court denied the motion, but Mejia-Espinoza "renews [his] request" for remand on this basis, Reply Br. 10 n.3.

"Under the law of the case doctrine, one panel of an appellate court generally will not reconsider questions that another panel has decided on a prior appeal in the same case." *In re City of Phila. Litig.*, 158 F.3d 711, 717 (3d Cir. 1998). While the doctrine does not "preclude our reconsideration of previously decided issues in extraordinary circumstances such as where . . . new evidence is available," *id.* at 718, Mejia-Espinoza presents the same arguments for remand that the motions panel rejected—namely that Ecuador is "one of the countries that has been hit the hardest by [COVID-19] in Latin America." Reply Br. 10.

[3] Except as noted below, we have jurisdiction to review this petition under 8 U.S.C. § 1252(a)(1).

4

*Hernandez*, and holding that "a deficient NTA cannot be supplemented with a subsequent [hearing] notice that does not meet the requirements" to constitute an NTA). But while the BIA stated that its precedent "foreclosed" Mejia-Espinoza's argument regarding the stop-time rule, it expressly declined to reach the issue, and instead rested its affirmation of the IJ's denial of cancellation of removal on two separate grounds: (1) that Mejia-Espinoza "did not demonstrate exceptional and extremely unusual hardship to his [U.S.] citizen children," and (2) that he "has not demonstrated that he merits relief in the exercise of discretion." A.R. 4–5; *see also* A.R. 5 (explaining that, in light of these two conclusions, the BIA "need not address . . . whether [Mejia-Espinoza] has demonstrated continuous physical presence"). Because the BIA did not decide the issue, we do not do so. *See, e.g.*, *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017) (holding that, "[i]f the [BIA] relies only on some of the grounds given for denying relief, we review only those grounds" (citation omitted)).[4]

Mejia-Espinoza next argues that the BIA "erred in its application of the legal standard of exceptional and extremely unusual hardship . . . to the established facts of this case." Reply Br. 6. Our review of this issue is limited to determining "whether the B[IA] or IJ applied the appropriate [legal] standard." *Radiowala v. Att'y Gen.*, 930 F.3d 577, 582 (3d Cir. 2019) (citing *Patel v. Att'y Gen.*, 619 F.3d 230, 233 (3d Cir. 2010)

---

[4] Mejia-Espinoza also argues in his reply brief that this matter should be remanded to the BIA because the "IJ relied on an incomplete record to find that [he] had not established that he is a person of good moral character," Reply Br. 9, which is statutorily required for cancellation of removal, *see* 8 U.S.C. § 1229b(b)(1)(B). But, as with the continuous-presence requirement, the BIA expressly declined to reach this issue, *see* A.R. 5, and hence we shall not do so.

(explaining that "we do not have jurisdiction to 'rehash' the IJ's determination of whether an alien meets this hardship requirement," but "do have jurisdiction to review whether the IJ used the correct legal standard to reach this determination" (citation omitted))).[5]

The BIA applied the correct legal standard in its hardship determination. Mejia-Espinoza argues that it impermissibly "require[d] a finding [that his children suffered from a] catastrophic illness" or that his removal would create an "unconscionable situation." Reply Br. 7. But the BIA merely noted that Mejia-Espinoza's children do not suffer from health problems that would support the existence of an unusual hardship; it did not suggest that such problems were the only way that hardship could be demonstrated. And it went on to consider other evidence—namely, evidence of Mejia-Espinoza's role in his children's lives. *See* A.R. 4 ("while [Mejia-Espinoza] testified that he is heavily involved in his children's lives, the [IJ] found that [he] did not meet his

_____

[5] Mejia-Espinoza suggests that the Supreme Court's recent decision in *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020), permits us to review the BIA's ultimate conclusion—not merely whether it applied the correct legal standard. But *Guerrero-Lasprilla* holds that the courts of appeals have jurisdiction to review "mixed questions" of law and fact—in that case, whether an alien has met the standard for equitable tolling of the deadline to file a motion to reopen. *See* 140 S. Ct. at 1068–73. But we have described the hardship determination not as a mixed question of law and fact, but as a "*discretionary* determination." *Patel*, 619 F.3d at 233 (emphasis added). We have held that *Guerrero-Lasprilla* does not permit us to review "a disagreement about weighing hardship factors[,]" as this is "a discretionary judgment call, not a legal question." *Hernandez-Morales v. Att'y Gen.*, 977 F.3d 247, 249 (3d Cir. 2020); *accord Galeano-Romero v. Barr*, 968 F.3d 1176, 1182–84 & n.9 (10th Cir. 2020) (rejecting the argument that, "after *Guerrero-Laprilla*, [a] challenge to the B[IA]'s misapplication of the legal standard for exceptional and extremely unusual hardship" is within a court's jurisdiction, and explaining, consistent with our decision in *Patel*, that such an application is a "matter[] left to the [BIA]'s discretion" (internal quotation marks and alterations omitted)). *But see Singh v. Rosen*, 984 F.3d 1142, 1154 (6th Cir. 2021) (concluding based on extensive analysis that the "ultimate hardship conclusion is the type of mixed question that we have jurisdiction to review after *Guerrero-Lasprilla*").

burden of proof . . . , especially considering the lack of corroborative evidence and testimony from [his] wife, who is the children's mother"). Hence we cannot conclude that the BIA imposed any additional requirement that there be a "catastrophic illness" or "unconscionable situation."

Mejia-Espinoza also argues that the BIA failed to review the IJ's hardship determination de novo, supporting this argument only by noting that the BIA affirmed for the reasons stated by the IJ. But the BIA explicitly stated its review was de novo, *see* A.R. 3, and its affirmance for the reasons set out by the IJ does not demonstrate that its review was deferential.

Finally, Mejia-Espinoza argues that the BIA did not "consider the hardship factors in [the] aggregate." Reply Br. 9. But he points to no indication that the BIA failed to do so, arguing only that it failed to account for factors other than his children's health—such as that he "was the sole financial provider for his children, [and] that his children are exceptionally talented in soccer and ballet, respectively." *Id.* As noted above, however, the BIA explicitly considered Mejia-Espinoza's testimony that he "supports his children" and "is heavily involved in [their] lives." A.R. 4. But it agreed with the IJ that this did not meet Mejia-Espinoza's burden of proof, "especially considering the lack of corroborative evidence and testimony from [his] wife." *Id.*

Even if the BIA applied the incorrect legal standard—or otherwise erred—in its conclusion that Mejia-Espinoza failed to demonstrate the requisite hardship, it also affirmed the IJ's conclusion that he did not merit a favorable exercise of discretion in light of his admission that he had falsely represented himself to be a U.S. citizen and used

7

another person's passport to reenter the country.  We lack jurisdiction to consider this discretionary determination, which independently supports the BIA's denial of cancellation of removal.

* * * * *

For the reasons set out above, Mejia-Espinoza's petition for review is dismissed in part and denied in part.  Insofar as the petition challenges the BIA's ultimate determination as to hardship, it is dismissed.  In all other respects, it is denied.